State *v.* Velasquez-Mattos

STATE OF CONNECTICUT *v.* DANIEL
VELASQUEZ-MATTOS
(SC 20683)

Robinson, C. J., and McDonald, D'Auria,
Mullins, Ecker and Alexander, Js.

*Syllabus*

Convicted of the crimes of sexual assault in the first degree and risk of injury to a child in connection with his sexual abuse of the victim, J, the defendant appealed to this court. The sexual abuse allegedly occurred over the course of several months, when the defendant, who lived in the same multifamily house as J and J's family, invited J to play video games and to do homework in the defendant's bedroom. On those occasions, the defendant touched his penis and J's penis, and penetrated J's anus with his penis. J eventually disclosed the abuse to his mother, M, and his grandmother, T, resulting in the defendant's arrest. In the count of the information pertaining to first degree sexual assault, the state alleged that the defendant had engaged in sexual intercourse with J on "diverse dates" over the course of three months. At trial, J testified that the first time the defendant touched him, he forced J to use his hand to touch the defendant's penis for about ten seconds. J also testified about an incident during which the defendant had inserted his penis into his "behind" and moved it "up and down . . . ." J testified that he had disclosed to M and T the "nasty stuff" that the defendant had done to him, which he described as kissing, touching, and anal penetration. During cross-examination, however, J conceded that he had told a forensic interviewer that the defendant never touched him with his mouth. J also clarified that the incident involving anal penetration occurred on a Thursday and that the defendant had touched him in that manner five or six times. M and T subsequently testified, over defense counsel's objection, as constancy of accusation witnesses. During an offer of proof, M testified that J had disclosed to her that the defendant subjected J to a variety of sexual conduct, including fellatio and anal penetration, and that, after each occasion, the defendant would take the bedsheets off the bed to wash them. M also testified that J had thanked her for taking him away from the "creepy man . . . ." The trial court limited M's constancy testimony, precluding her from testifying before the jury about the statements regarding the "creepy man" and the bedsheets. Responding to defense counsel's objection, the trial court assured counsel that there would be "unfettered cross-examination" of the witnesses. T testified that J had disclosed to her the defendant's conduct involving anal penetration and fellatio. J's father, R, also testified, recounting two occasions on which he heard J scream while J was in the defendant's bedroom. R confirmed on direct examination that he had two prior felony

State *v.* Velasquez-Mattos

convictions, but the prosecutor objected when, on cross-examination, defense counsel inquired into whether R had any pending charges and the nature of those charges. During a colloquy with the court, the prosecutor conceded that defense counsel could question R about his prior convictions but not about any pending charges. The court stated that it would note R's two felony convictions when it charged the jury and then instructed the jury to disregard any mention of pending charges. When cross-examination resumed, defense counsel did not inquire into any issue relating to R's motive, bias, or interest in testifying favorably for the state but, instead, questioned R about comments that he had made to the police about T's use of "reverse psychology" to coax J into disclosing the sexual abuse. At the close of evidence, defense counsel did not file a request to charge that included a specific unanimity instruction or object to the trial court's proposed jury instructions, which also omitted a specific unanimity instruction. On the defendant's appeal from the judgment of conviction, *held*:

1. The trial court did not abuse its discretion in admitting the constancy of accusation testimony of M and T relating to J's disclosure of the defendant's sexual abuse:

Under the constancy of accusation rule that existed at the time of the defendant's trial, as articulated by this court in *State* v. *Troupe* (237 Conn. 284), a person to whom a sexual assault victim has reported the assault may testify only with respect to the fact and timing of the victim's complaint, any testimony regarding the details of the assault must be strictly limited to those necessary to associate the victim's complaint with the pending charge or charges, and such evidence is admissible only to corroborate the victim's testimony and not for substantive purposes.

The constancy testimony of M and T was within the parameters set forth in *Troupe*, as the details that they provided regarding anal penetration and other sexual misconduct served to associate J's complaint with the pending charges by corroborating J's direct testimony that the defendant had performed various sexual acts on him, including anal penetration, the trial court limited M's constancy testimony by excluding certain extraneous but potentially inflammatory details, such as J's comments regarding the "creepy man" and the defendant's changing of the bedsheets, and the trial court properly instructed the jury that such evidence was to be considered only for the purpose of determining the weight and credibility of J's testimony.

Moreover, contrary to the defendant's claim that the admission of M's and T's constancy testimony was improper because their testimony was inconsistent with J's trial testimony, insofar as the testimony of M and T included allegations of fellatio whereas J's testimony did not, neither this court nor the Appellate Court has required the absence of inconsistencies between the victim's testimony and that of the constancy witness

State *v.* Velasquez-Mattos

or witnesses in order for the constancy testimony to be admissible, and any such inconsistencies can be explored during the cross-examination of the victim or the constancy witness, and are to be assessed by the jury.

In the present case, the inconsistency between the testimony of M and T about fellatio and J's testimony about his prior statement that the defendant had never touched him with his mouth could have been, but was not, highlighted by defense counsel in connection with the jury's evaluation of the credibility of the trial testimony, and defense counsel was not precluded from attacking J's credibility and was expressly permitted to conduct "unfettered cross-examination" of the constancy witnesses.

2. The defendant could not prevail on his unpreserved claim that the trial court had violated his constitutional rights to confront and cross-examine his accusers and to present a defense by precluding defense counsel from cross-examining R about R's pending criminal charges, the defendant having failed to demonstrate the existence of a constitutional violation under the third prong of the test for review of unpreserved constitutional claims set forth in *State* v. *Golding* (213 Conn. 233), as modified by *In re Yasiel R.* (317 Conn. 773):

The defendant's claim on appeal was premised on the argument that R's pending criminal charges caused him to be biased, insofar as he allegedly expected leniency in exchange for testifying favorably for the state.

Nonetheless, the defense never claimed at trial that evidence of R's pending criminal charges was admissible under the provision (§ 6-5) of the Connecticut Code of Evidence governing impeachment by evidence showing bias, prejudice, or interest, and, accordingly, the defendant's appellate theory that the evidence of R's pending charges was admissible to show bias was unpreserved.

The defendant failed to demonstrate the existence of a violation of his constitutional rights because, during defense counsel's cross-examination of R, counsel was permitted to sufficiently explore the theory of defense, namely, that no sexual acts between the defendant and J had occurred and that J's allegations were entirely fabricated, as counsel had elicited testimony regarding T's use of "reverse psychology" on J to goad J into alleging the sexual abuse.

Moreover, defense counsel's reference to the nature of the pending charges, namely, forgery in the third degree, without mentioning R's motive or bias in testifying for the state, indicated that he intended to impeach R's credibility only, and the trial court properly excluded evidence of the pending charges on that basis, in accordance with the provision (§ 6-7) of the Connecticut Code of Evidence governing impeachment with evidence of a prior conviction.

State *v.* Velasquez-Mattos

Furthermore, defense counsel was permitted to elicit evidence that R had two prior felony convictions, and the trial court reminded defense counsel, during his cross-examination of R, that counsel could attack or challenge any witness' credibility, motivation, or bias at any time.

3. The defendant was not entitled to a new trial on the charge of sexual assault in the first degree because, although it was undisputed that that charge was duplicitous, insofar as it was premised on multiple acts, each of which would have constituted a separate violation of the first degree sexual assault statute (§ 53a-70), and such duplicity was not cured by a bill of particulars or a specific unanimity instruction, the defendant did not suffer prejudice as a result of the uncured violation:

a. Contrary to the state's claim, defense counsel's failure to object to the trial court's proposed jury instructions, which omitted a specific unanimity instruction on the first degree sexual assault charge, did not constitute an implicit waiver of the defendant's unpreserved instructional error claim under the rule set forth in *State* v. *Kitchens* (299 Conn. 447):

The defendant's claim involved his right to jury unanimity as to instances of conduct, which arises when a defendant is charged in a single count with having violated a single statutory provision on multiple, separate occasions, and this court first recognized jury unanimity claims involving instances of conduct in *State* v. *Douglas C.* (345 Conn. 421), which, along with its companion case, *State* v. *Joseph V.* (345 Conn. 516), was released after the conclusion of the defendant's trial in the present case.

Under *Kitchens*, the waiver of a constitutional challenge to jury instructions is implied rather than express because it arises from an inference that the defendant knowingly and voluntarily relinquished the right in question, but, when the law governing a defendant's constitutional claim has changed after the defendant's trial, counsel acting under binding precedent in effect at the time of the trial cannot make a knowing and intelligent waiver of rights affected by the subsequent change in the law.

In light of the recent and significant change in the law that occurred after the conclusion of the defendant's trial by virtue of this court's decisions in *Douglas C.*, which recognized the separate kinds of jury unanimity claims and adopted the federal test for claims of unanimity as to instances of conduct, and in *Joseph V.*, which held that § 53a-70, under which the defendant in the present case was charged, does not criminalize a continuing course of conduct, defense counsel in the present case did not knowingly and intelligently waive the defendant's right to challenge the trial court's failure to include a specific instruction on jury unanimity with respect to the first degree sexual assault charge.

b. This court concluded that, because the defendant was not prejudiced by the duplicitous sexual assault charge, there was no constitutional violation with respect to his right to jury unanimity as to instances of

State *v.* Velasquez-Mattos

conduct, and, accordingly, the defendant could not prevail on his claim under the third prong of *Golding*:

Although the record demonstrated that the prosecutor had explored multiple instances of sexual conduct during the state's case-in-chief, and the defendant claimed that J had testified to at least three specific, discrete incidents that occurred over the course of several months, this court's review of the record revealed that J testified about two specific instances of conduct, namely, the first time the defendant ever touched J, when the defendant forced J to touch the defendant's penis, and the Thursday on which anal penetration occurred, which served as examples of the recurring sexual activity.

In the present case, only the allegations involving the anal penetration constituted sexual intercourse, as that term is defined by the statutory scheme, both the prosecutor and defense counsel, after J testified about the first instance of abuse, focused their questioning on the abuse that occurred on the Thursday in question, and the record demonstrated that the prosecutor had presented substantial evidence of that specific instance of sexual intercourse to serve as an exemplar of the ongoing sexual abuse that J had endured at the hands of the defendant.

Moreover, although neither the information nor the jury instructions indicated on what instance of sexual intercourse the first degree sexual assault charge was based, the prosecutor specified during closing argument that the state was relying on the Thursday incident as the basis for that charge, the prosecutor's direct examination of J, M, T, and R was consistent with that approach, and defense counsel, during closing argument, also attacked the testimony of J, M, and R regarding the Thursday incident, while maintaining that J had fabricated the abuse entirely.

Furthermore, the risk of prejudice to the defendant was minimized because the same theory of defense was used for both the single specific incident alleged and the general conduct alleged, namely, that the sexual abuse never happened and that it was entirely fabricated, such that there was no realistic possibility of juror confusion concerning the multiple incidents insofar as the jurors were required either to find that the allegations were fabricated and that no sexual abuse ever occurred, or to believe J's testimony, as corroborated by the other witnesses, that anal penetration had in fact occurred on that certain Thursday.

In addition, although M and T testified that J had disclosed acts of fellatio, the jurors were specifically instructed not to consider that fact substantively, and, in the absence of evidence to the contrary, the jurors were presumed to have followed that instruction, and the only substan-

State *v.* Velasquez-Mattos

tive evidence of fellatio was contained in a medical record that the defense, itself, placed before the jury.

Argued February 23—officially released September 12, 2023

*Procedural History*

Substitute information charging the defendant with one count of the crime of sexual assault in the first degree and two counts of the crime of risk of injury to a child, brought to the Superior Court in the judicial district of New Haven and tried to the jury before *B. Fischer, J.*; verdict and judgment of guilty, from which the defendant appealed to this court. *Affirmed.*

*Denis J. O'Malley III*, assistant public defender, with whom, on the brief, was *Mark Rademacher*, assistant public defender, for the appellant (defendant).

*Laurie N. Feldman*, assistant state's attorney, with whom, on the brief, was *John P. Doyle*, state's attorney, for the appellee (state).

*Opinion*

ROBINSON, C. J. The principal issue in this appeal requires us to consider the relationship between the waiver doctrine announced in *State* v. *Kitchens*, 299 Conn. 447, 482–83, 10 A.3d 942 (2011), which applies to unpreserved challenges to jury instructions, and the use of jury instructions to protect the sixth amendment right to jury unanimity with respect to duplicitous charges, as explained by our recent decisions in *State* v. *Douglas C.*, 345 Conn. 421, 285 A.3d 1067 (2022), and *State* v. *Joseph V.*, 345 Conn. 516, 285 A.3d 1018 (2022). The defendant, Daniel Velasquez-Mattos, appeals directly[1] from the judgment of conviction, rendered after a jury trial, of one count of sexual assault in the first degree,

---

[1] The defendant appealed directly to this court pursuant to General Statutes § 51-199 (b) (3). Although he did not file a timely appeal, a habeas court restored his appellate rights pursuant to a stipulated agreement.

State *v.* Velasquez-Mattos

in violation of General Statutes § 53a-70 (a) (2),[2] and two counts of risk of injury to a child, in violation of General Statutes § 53-21 (a).[3] On appeal, the defendant claims that (1) the trial court improperly admitted, pursuant to the constancy of accusation doctrine, testimony that included excessive and unnecessary details of the sexual assault of the victim, J,[4] (2) the trial court improperly excluded impeachment evidence of pending criminal charges against a key witness for the state, and (3) the first degree sexual assault charge was duplicitous, in violation of his sixth amendment right to jury unanimity. We disagree with the defendant's claims and, accordingly, affirm the judgment of the trial court.

The record reveals the following relevant facts, which the jury reasonably could have found, and procedural history. The defendant lived in the first floor apartment, and J's family lived in the second floor apartment, of a multifamily house. The defendant befriended then eight year old J and purchased various gifts for him, including clothes, video games, and a PlayStation 4 gaming console. Almost nightly, the defendant invited

[2] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person . . . (2) engages in sexual intercourse with another person and such other person is under thirteen years of age and the actor is more than two years older than such person . . . ."

[3] General Statutes § 53-21 (a) provides in relevant part: "Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child, or (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . ."

[4] In accordance with our policy of protecting the privacy interests of victims of sexual abuse and the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

State *v.* Velasquez-Mattos

J downstairs to do homework and play video games in the defendant's bedroom, locking the bedroom door each time. During these visits in the locked bedroom, the defendant touched J's and his own penis and anally penetrated J with his penis.

J did not immediately disclose the sexual abuse because the defendant once brandished a knife in J's presence and threatened to kill J's family if he ever told anyone. The night before J disclosed the abuse to his mother, M, and his grandmother, T, the defendant visited their upstairs apartment, where he kissed J's neck, told J that he loved him, and played two sexually suggestive songs on his cell phone in front of M and T. After M and T told the defendant to stop and leave the apartment, the defendant began to cry and stated that he was going to write J a letter and commit suicide, which resulted in the defendant's hospitalization. The next day, J divulged in detail to M and T the "nasty stuff" that the defendant had done to him. M immediately called the police and took J to a hospital to be examined. When the police questioned the defendant regarding his relationship with J, the defendant initially denied that any relationship existed but later admitted that he spent three or four days per week in his bedroom with J.

The defendant was arrested in March, 2015, and subsequently charged with, "on or about diverse dates between August, 2014, [through] October, 2014," (1) one count of sexual assault in the first degree, alleging that the victim was under thirteen years of age and the actor was more than two years older, in violation of § 53a-70 (a) (2), (2) one count of risk of injury to a child by contact with the intimate parts of a child under the age of sixteen in a sexual and indecent manner likely to impair the health and morals of the child, in violation of § 53-21 (a) (2), and (3) one count of risk of injury to a child by causing or permitting a child under the age of sixteen to be placed in a situation or engaging

State *v.* Velasquez-Mattos

in an act likely to impair the health or morals of the child, in violation of § 53-21 (a) (1). The case was tried to a jury in December, 2015. At trial, M and T testified as constancy of accusation witnesses for the state regarding J's disclosure of the sexual abuse, and J's father, R, also testified for the state. The jury found the defendant guilty on all three counts, and the trial court rendered a judgment of conviction in accordance with the jury's verdict, sentencing him to a total effective sentence of twenty-five years of incarceration, execution suspended after eighteen years, followed by twenty years of probation. This appeal followed.

On appeal, the defendant claims that (1) the trial court abused its discretion by permitting M and T to testify regarding the details of J's report of the sexual assault and his disclosure to them of acts of fellatio about which he did not testify at trial, (2) the trial court improperly excluded impeachment evidence favorable to his defense that a key state's witness, R, had pending criminal charges, and (3) under *State* v. *Douglas C.*, supra, 345 Conn. 421, and *State* v. *Joseph V.*, supra, 345 Conn. 516, the trial court's failure to provide a specific unanimity instruction requires reversal of his sexual assault conviction. Additional relevant facts will be set forth as necessary in the context of each claim on appeal.

I

We first consider the defendant's claim that, under the legal framework set forth in *State* v. *Troupe*, 237 Conn. 284, 304, 677 A.2d 917 (1996), the trial court abused its discretion by admitting constancy of accusation evidence from M and T relating to J's disclosure of the defendant's sexual conduct. To begin, the defendant contends that the admission of the constancy testimony violated § 6-11 (c) of the 2009 edition of the Connecticut Code of Evidence, the version of that provision in effect

State *v.* Velasquez-Mattos

at the time of the defendant's trial,[5] in two ways: (1) the details of the alleged sexual activity between J and the defendant were not necessary to associate J's allegation with the pending charges, and (2) constancy testimony that the defendant had performed fellatio on J was inconsistent with J's testimony at trial, which did not mention that act. Relying on *State* v. *Rolon*, 257 Conn. 156, 777 A.2d 604 (2001), the defendant argues that, because *Troupe* permits testimony only as to "the time and place of the attack or the identity of the alleged perpetrator"; (internal quotation marks omitted) id., 191; the admission of such details for constancy purposes was an abuse of the trial court's discretion. The defendant further contends that the trial court's abuse of discretion requires reversal, considering that the state's case rested solely on J's credibility.

In response, the state argues that, under the case law governing constancy evidence at the time of trial; see footnote 5 of this opinion; the trial court correctly followed the limitations of *Troupe* by admitting the constancy evidence because the witnesses' testimony corroborated J's testimony and any inconsistency could

---

[5] Section 6-11 of the Connecticut Code of Evidence has been revised to reflect this court's modification of the constancy of accusation doctrine in *State* v. *Daniel W. E.*, 322 Conn. 593, 629–30, 142 A.3d 265 (2016). Section 6-11 (c) of the 2023 version of the Connecticut Code of Evidence provides in relevant part: "(1) If the defense impeaches the credibility of a sexual assault complainant regarding any out-of-court complaints or delayed reporting of the alleged sexual assault, the state shall be permitted to call constancy of accusation witnesses. . . . (2) If the complainant's credibility is not impeached by the defense regarding any out-of-court complaints or delayed reporting of the alleged sexual assault, constancy of accusation testimony shall not be permitted, but, rather, the trial court shall provide appropriate instructions to the jury regarding delayed reporting." The revision to § 6-11 did not go into effect until February 1, 2018, subsequent to the conclusion of the trial in the present case on December 10, 2015. Thus, this issue is governed by the unmodified constancy of accusation doctrine as it existed prior to *Daniel W. E.* See, e.g., *State* v. *Daniel W. E.*, supra, 630; *State* v. *Prince A.*, 196 Conn. App. 413, 418–19, 229 A.3d 1213, cert. denied, 335 Conn. 949, 238 A.3d 20 (2020).

State *v.* Velasquez-Mattos

be explored on cross-examination. The state, quoting
*State* v. *Troupe*, supra, 237 Conn. 304, also contends
that the trial court correctly limited the testimony solely
to statements concerning " 'the details surrounding the
assault . . . .' "[6] We agree with the state and conclude
that the constancy of accusation evidence admitted in
this case did not violate the limitations set forth in
*Troupe.*

At trial, J testified that the "first time" that the defen-
dant touched him occurred while he was in the defen-
dant's bedroom playing video games. The defendant
touched his own penis, "put it near . . . [J's] behind,"
and then forced J to touch the defendant's penis with
J's hand, which J was forced to move "up and down"
for about ten seconds. J also testified that, on another
occasion, the defendant put his penis "halfway" into J's
"behind," that the defendant moved it "up and down,"
which "hurt" and made J scream, and that he "felt stuff"
on his back. Later, on direct examination, J testified
that he told M and T that the defendant had done "nasty
stuff" to him. When the prosecutor asked J to explain
the "nasty stuff," J stated that the defendant "used to
kiss [J] and . . . like, take his thing in [J's] behind,
and, like, touch [J's] boy part." On cross-examination,
J conceded that he had told a forensic interviewer that
"[the defendant] never touched [him] with his mouth
. . . ." On redirect examination, when again asked
about the disclosure of the "nasty stuff" to M and T, J
testified that, "when [he] came back from school, [he]
told [his] grandma all about it." J then answered in the
affirmative when the prosecutor clarified that J had

_____

[6] The state also posits, as alternative grounds for affirmance, that (1) the
statements were admissible under *Troupe* as prior consistent statements
made to rebut the suggestion of recent fabrication, and (2) any error is
harmless. Given our conclusion that the constancy of accusation evidence
did not violate the limitations set forth in *Troupe*, we need not reach these
alternative grounds.

State *v.* Velasquez-Mattos

"told [his] grandmother . . . all the . . . nasty things that [the defendant] had done . . . ."

M, who is J's mother, subsequently testified for the state as a constancy witness. During the state's offer of proof, M testified that J had thanked her for taking the "creepy man away from" him. She also testified that J told her that the defendant had brandished a knife at him and had threatened to kill J's family if he ever told anyone about the abuse. She continued: "[J] said that . . . [the defendant] took [J's] hand . . . [to] ejaculate, [to] jerk [the defendant] . . . . Then . . . [J] said that [the defendant] . . . put his [penis] in [J's] back—in [J's] back area," that the defendant moved it "in and out," that "it hurt," and that, "all of a sudden [J] felt wet stuff on his back." J also had told M about an incident in which the defendant put his mouth on J's penis, and that, each time after the defendant finished doing "nasty things" to J, the defendant would take the bedsheets off the bed to wash them.

Defense counsel objected to M's constancy of accusation testimony, as proffered in the state's offer of proof, arguing that it was "highly prejudicial" and that it went "well beyond the purpose of [the constancy] rule." The trial court sustained the objection in part, allowing M's constancy testimony in a "very limited" manner, by precluding her from testifying about J's "creepy man" and bedsheet comments. When defense counsel further objected to M's testimony on the ground that J had never testified as to an allegation of fellatio, the trial court responded that "constancy witnesses can testify to what [an] alleged complainant said" and that defense counsel would "have unfettered cross-examination." The court further instructed M that her answers concerning J's complaints had to be "very succinct . . . ." M testified consistently with her offer of proof testimony and the trial court's instructions, and additionally testified that "[J] had told [her] that [the defendant]

State *v.* Velasquez-Mattos

tried taking [J's] head to put it down to . . . [the defendant's] private part.'' Defense counsel then cross-examined M but did not ask her about the allegations of fellatio.

Over defense counsel's objection, T then testified as the state's second constancy witness. During the offer of proof, T testified that J had stated that the defendant did something "nasty" and that he was "force[d]" to "suck [the defendant's] penis." T also testified that J had disclosed that the defendant "put [his penis] inside [J's] butt . . . [that he] put . . . the thing on top of [J's] back," and that he "did it . . . almost every day." She, too, reiterated that the defendant had told J that, if J told anyone, he would kill J's family. As with M, defense counsel also cross-examined T but did not ask her about the allegations of fellatio. In charging the jury, the trial court instructed that the constancy testimony of M and T should be considered only for weight and credibility purposes.

Before turning to the defendant's claim on appeal, we set forth the applicable law governing the constancy of accusation doctrine and our scope and standard of review, as it existed at the time of trial. "In [*State* v. *Troupe*, supra, 237 Conn. 303–304] we determined that the constancy of accusation doctrine should be modified to better accommodate the interest of the victim in being protected against the unwarranted, but nonetheless persistent, view that a sexual assault victim who does not report the crime cannot be trusted to testify truthfully about the incident . . . and the interest of the accused in being protected against an enhanced risk that the jury may be unduly swayed by the repeated iteration of the constancy of accusation testimony. . . . We thus decided in *Troupe* to reject the then existing rule that a person to whom a sexual assault victim has complained may provide substantive testimony regarding the incident. . . . We specifically concluded: [A]

State *v.* Velasquez-Mattos

person to whom a sexual assault victim has reported the assault may testify only with respect to the fact and timing of the victim's complaint; any testimony by the witness regarding the details surrounding the assault must be strictly limited to those necessary to associate the victim's complaint with the pending charge, including, for example, the time and place of the attack or the identity of the alleged perpetrator. In all other respects, our current rules remain in effect. Thus, such evidence is admissible only to corroborate the victim's testimony and not for substantive purposes. Before the evidence may be admitted, therefore, the victim must first have testified concerning the facts of the sexual assault and the identity of the person or persons to whom the incident was reported. In determining whether to permit such testimony, the trial court must balance the probative value of the evidence against any prejudice to the defendant.'' (Citations omitted; internal quotation marks omitted.) *State* v. *Samuels*, 273 Conn. 541, 547–48, 871 A.2d 1005 (2005).

''[W]hether evidence is admissible under the constancy of accusation doctrine is an evidentiary question that will be overturned on appeal only [when] there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice. . . . An appellate court will make every reasonable presumption in favor of upholding the trial court's evidentiary rulings. . . . To the extent that the evidentiary ruling in question is challenged as an improper interpretation of a rule of evidence, [appellate] review is plenary.'' (Internal quotation marks omitted.) *State* v. *Prince A.*, 196 Conn. App. 413, 419, 229 A.3d 1213, cert. denied, 335 Conn. 949, 238 A.3d 20 (2020). Because the defendant's claims on appeal are limited to the application of the constancy standards under *Troupe* that governed at the time of his trial; see footnote 5 of this opinion; we

State *v.* Velasquez-Mattos

review the trial court's decision to admit the constancy testimony of M and T for an abuse of discretion.

This court has "consistently held that constancy of accusation testimony is admissible to corroborate the victim's [allegations] after the victim has first testified as to what transpired and to whom [he or] she related the event." *State* v. *DePastino*, 228 Conn. 552, 566, 638 A.2d 578 (1994). Several Appellate Court decisions, the continuing vitality of which the defendant does not challenge in this appeal, have addressed the extent to which constancy testimony may corroborate a victim's testimony with specific details about the allegations of sexual conduct without violating the boundaries of admissibility set forth in *Troupe* and whether the admission of such detailed constancy testimony was sufficiently prejudicial to require reversal. See, e.g., *State* v. *Vumback*, 68 Conn. App. 313, 323–24, 791 A.2d 569 (2002), aff'd, 263 Conn. 215, 819 A.2d 250 (2003).

In *Vumback*, four constancy witnesses testified about what the victim had disclosed to each of them, including testimony that the victim stated that she "was getting out of the shower and . . . [the defendant] approached her and attempted to put his penis in her and tried to kiss her," that "she had been sexually molested in her vaginal area and her breasts by the defendant," that the defendant "had asked her to touch his penis . . . [and] had attempted to . . . perform oral sex on her and touch her breasts . . . [and that the defendant also] attempt[ed] to put his penis between her legs," and that the defendant had "asked [the victim] to put his penis in [her] mouth . . . ." (Internal quotation marks omitted.) Id., 325–26. One constancy witness further testified that the victim "also explained oral sex performed by the defendant on her" and that the defendant "attempted to put his penis inside of her." (Internal quotation marks omitted.) Id., 326. The Appellate Court held that each witness' testimony "corroborated the victim's accusa-

State *v.* Velasquez-Mattos

tions and associated the defendant with the pending charges'' within the limitations set forth in *Troupe* and that the defendant failed to show either that the trial court had abused its discretion or that he had been substantially prejudiced by the admissions. Id., 327.

Similarly, in *State* v. *Orhan*, 52 Conn. App. 231, 238, 726 A.2d 629 (1999), the defendant claimed that the trial court had improperly permitted the constancy witness to provide testimony concerning details of the complaint beyond that permitted by *Troupe*. The constancy witness testified that the victim had disclosed that the defendant "came in the middle of the night and . . . touched [her] where he shouldn't have" and that the defendant "had touched her private parts while she was sleeping . . . the night before." (Internal quotation marks omitted.) Id., 242. In holding that this constancy testimony was consistent with *Troupe*, the Appellate Court emphasized that "[t]he controlling language from *Troupe* does not limit the identifying information that may be provided. It limits only the extent of the information provided. [The court in *Troupe*] merely gave examples of how a sexual assault might be identified; it did not hold that that was the only testimony that could be provided." Id., 243.

Likewise, in *State* v. *Lisevick*, 65 Conn. App. 493, 504, 783 A.2d 73, cert. denied, 258 Conn. 933, 785 A.2d 230 (2001), the defendant argued that the trial court had improperly admitted testimony that included more details than were necessary to connect the victim's complaint to the charge. In that case, one constancy witness testified that the victim had disclosed "that the defendant made him 'touch' and 'kiss' her 'private parts.' " Id., 507. Another constancy witness testified "that the victim told her that the defendant had made 'him touch her in—on the vagina, buttocks and breast.' " Id., 507–508. The Appellate Court concluded that both statements were within the scope of permissible con-

stancy of accusation testimony. See id.; see also *State* v. *Williams*, 65 Conn. App. 449, 464–65, 783 A.2d 53 (constancy witness' testimony that victim had disclosed that defendant subjected her "to oral and genital sexual abuse, and sexual abuse involving masturbation," was consistent with *Troupe* because trial court had instructed jury to use testimony corroboratively and because "various counts alleged sexual abuse in the form of cunnilingus, fellatio, [vaginal penetration], and acts of masturbation" (internal quotation marks omitted)), cert. denied, 258 Conn. 927, 783 A.2d 1032 (2001).

The Appellate Court has similarly addressed whether constancy testimony should have been excluded because of inconsistencies with the victim's testimony. In *State* v. *Velez*, 17 Conn. App. 186, 551 A.2d 421 (1988), cert. denied, 210 Conn. 810, 556 A.2d 610, cert. denied, 491 U.S. 906, 109 S. Ct. 3190, 105 L. Ed. 2d 698 (1989), the Appellate Court observed that "neither [it] nor this court has required as a condition of its admissibility that there be no inconsistencies between the victim's testimony and that of the constancy of accusation witness. . . . Any inconsistencies between the victim's testimony and the testimony of the witness are left to the jury for a determination of whether the victim was constant and consistent in relating what had happened to her." (Citation omitted.) Id., 189; see, e.g., *State* v. *Kelley*, 229 Conn. 557, 566, 643 A.2d 854 (1994) ("Rather than disadvantaging a defendant, [the constancy] doctrine supplies a fertile field for cross-examination of a complainant with reference to ascertaining where the truth lies. . . . In addition to providing additional information on which the defendant can cross-examine the victim, the defendant can cross-examine the constancy of accusation witnesses." (Citation omitted; internal quotation marks omitted.)); *State* v. *Brigandi*, 186 Conn. 521, 530–31, 442 A.2d 927 (1982) (trial court properly allowed correctly instructed jury "to decide as a

question of fact'' whether victim's allegations and testimony had been ''constant and consistent'' (internal quotation marks omitted)).

After reviewing the record in this case, we conclude that the trial court did not abuse its discretion by admitting the constancy testimony of M and T because it was within the parameters set forth in *Troupe* and the defendant has not shown substantial prejudice or injustice. The details that M and T provided to the court regarding anal penetration and other sexual misconduct served ''to associate the victim's allegations with the pending charge[s]''; (internal quotation marks omitted) *State* v. *Samuels*, supra, 273 Conn. 548; by corroborating J's direct testimony that the defendant had performed various sexual acts on him, including anal penetration. Although J did not testify about fellatio, inconsistencies between the constancy testimony and J's testimony do not make the former inadmissible. See, e.g., *State* v. *Velez*, supra, 17 Conn. App. 189. The inconsistency with J's prior statement that the defendant had never touched him with his mouth could have been—but was not— highlighted by defense counsel in connection with the jury's evaluation of the credibility of the trial testimony presented, which the jury could have chosen to credit or discredit. See, e.g., *State* v. *Ayala*, 333 Conn. 225, 237, 215 A.3d 116 (2019). Finally, the trial court limited M's constancy testimony by excluding certain extraneous but potentially inflammatory details, such as J's comments regarding the ''creepy man'' and the defendant's changing of the bedsheets, and properly instructed the jury that the evidence was to be considered only in determining the weight and credibility of J's testimony.

The defendant's reliance on *State* v. *Rolon*, supra, 257 Conn. 156, is misplaced. The trial court in that case permitted the state to offer detailed testimony through its constancy witness for the sole purpose of rehabilitating the witness under the prior consistent statement

State *v.* Velasquez-Mattos

exception to the rule against hearsay. Id., 190. This court concluded in *Rolon* that, because the defendant had been precluded from attacking the victim's credibility on the basis of her prior sexual abuse by another individual, and because the inconsistencies in her testimony were "insignificant" and did not justify the repeated use of detailed constancy of accusation testimony for rehabilitation purposes, the substantive testimony "proved to be far more prejudicial than probative . . . ." Id., 190–91. In contrast to *Rolon*, the defendant in the present case was not precluded from attacking the credibility of J or any other witness, or from exploring the inconsistency regarding the allegations of fellatio. In fact, the trial court permitted defense counsel "unfettered cross-examination" of the constancy witnesses. Accordingly, we conclude that the trial court did not abuse its discretion in admitting M's and T's constancy of accusation testimony.

II

The defendant next claims that his sixth and fourteenth amendment rights to confront and cross-examine his accusers and to present a defense were violated when the trial court did not permit him to cross-examine R, who is J's father and a witness for the state, about criminal charges that were pending against him.

The following additional facts are relevant to this claim. R testified at trial that he had heard J scream from the defendant's bedroom on two occasions. The first time, he heard J "screaming a little bit" and went to check on him, only to find him behind the defendant's locked bedroom door. The second time, on October 2, 2014, R was with M when he heard J scream; he subsequently saw J ascending the stairs with the defendant following behind. Cross-examination of R began with defense counsel's statement that he was "just going into background a little bit." Defense counsel pro-

State *v.* Velasquez-Mattos

ceeded to confirm with R that he had testified, on direct examination, that he had prior felony convictions. Defense counsel then asked R if he had any pending charges, which prompted R to respond that he was "going to court right now." When defense counsel asked whether those charges were for forgery in the third degree, the prosecutor objected. Outside the presence of the jury, the trial court asked defense counsel whether R was entitled to a presumption of innocence similar to that afforded to the defendant, and counsel agreed that R was so entitled. The trial court then responded that the "jury doesn't hear about pending cases" and asked whether there was "anything else as far as record that [the trial court] need[ed] to hear about outside the presence of the jury . . . ." Defense counsel replied, "I don't think so, Your Honor."

The prosecutor noted for the record that he had provided defense counsel with R's criminal history and that he had already introduced the fact that R had a felony conviction. The prosecutor consequently asked the trial court to strike the testimony regarding the pending charges and their specific nature, because the jury "shouldn't take that into account." The prosecutor and the trial court then engaged in a colloquy, addressing the parties' stipulation that R had two felony convictions. The prosecutor conceded that defense counsel could question R about his two felony convictions "but . . . not for what they are and also not about pending charges for which [R had] the presumption of innocence." The trial court then noted that, when it charged the jury, it would indicate that R had two felony convictions. Before defense counsel was permitted to continue his cross-examination, the trial court instructed the jury to disregard any mention of a pending charge or its nature.

At no point during the remainder of the cross-examination of R did defense counsel revisit any issue relating

State *v.* Velasquez-Mattos

to R's motive, bias, or interest to testify favorably for
the state. Indeed, defense counsel subsequently inquired
into R's involvement as a witness to a burglary at the
defendant's residence, where the PlayStation 4 was sto-
len, and the prosecutor objected on relevance grounds.
After sustaining the objection outside the presence of
the jury, the trial court noted that, "to be clear . . .
[defense counsel] could—and either counsel knows,
[they] could attack or challenge any witness' credibility,
motivation, [or] bias at any time." At the conclusion of
R's cross-examination, defense counsel asked R whether
he remembered telling police detectives that T had used
"reverse psychology" to get J to disclose the defendant's
sexual misconduct. R responded that T told J that the
defendant had "told her the truth, not the way [defense
counsel was] trying to flip it around," and that it was
not T "beating it [into J's] head the way [defense counsel
was] trying to make it seem." At the close of the evi-
dence, the trial court instructed the jury that it could
consider R's prior felony convictions only for purposes
of assessing his credibility.

The defendant contends that his constitutional claim
was preserved because, even though he did not cite to
the rule or any constitutional right, he made it "abun-
dantly clear" that his defense was that nothing had
happened to J. Therefore, the defendant contends that
the incriminating nature of R's testimony, which was
that he had heard J scream from the defendant's bed-
room on two occasions, was obvious. Relying on *State*
v. *Arroyo*, 292 Conn. 558, 56970–72, 973 A.2d 1254
(2009), cert. denied, 559 U.S. 911, 130 S. Ct. 1296, 175
L. Ed. 2d 1086 (2010), which is a jailhouse informant
case, the defendant contends that R likely expected
leniency if he testified favorably for the state. He argues
that the trial court's confusion of two different rules of

State *v.* Velasquez-Mattos

evidence, namely, §§ 6-5[7] and 6-7[8] of the Connecticut
Code of Evidence, was harmful because of the impor-
tance of R's testimony and the fact that no other witness
provided firsthand corroboration of the allegations of
abuse.

In response, the state argues that the trial court prop-
erly precluded cross-examination regarding R's pending
criminal charges because, under existing case law
applying § 6-5 of the Connecticut Code of Evidence, a
party who wants to impeach a witness for motive, bias,
or interest must indicate his or her desire to do so to
the trial court. See, e.g., *State* v. *Devalda*, 306 Conn.
494, 517–18, 50 A.3d 882 (2012) (defendant's evidentiary
claim was unpreserved because he never claimed that
statement was admissible under § 6-6 (a) of Connecticut
Code of Evidence). The state posits that the prosecu-
tor's colloquy with the trial court illustrates that defense
counsel sought to admit the evidence of pending
charges under § 6-7 of the Connecticut Code of Evi-
dence, which governs impeachment by conviction,
rather than § 6-5, which governs general matters of bias
or interest. Because the defendant never put the trial
court on notice—expressly or implicitly— of his appel-
late theory that the evidence was admissible on grounds
of bias, motive, or interest grounds, the state further
argues that the defendant did not create a record for
review and cannot show a constitutional violation under

[7] Section 6-5 of the Connecticut Code of Evidence provides: "The credibil-
ity of a witness may be impeached by evidence showing bias for, prejudice
against, or interest in any person or matter that might cause the witness to
testify falsely."

[8] Section 6-7 (a) of the Connecticut Code of Evidence provides: "For the
purpose of impeaching the credibility of a witness, evidence that a witness
has been convicted of a crime is admissible if the crime was punishable by
imprisonment for more than one year. In determining whether to admit
evidence of a conviction, the court shall consider: (1) the extent of the
prejudice likely to arise; (2) the significance of the particular crime in
indicating untruthfulness; and (3) the remoteness in time of the conviction."

*State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015).[9] Alternatively, the state contends that any evidentiary error was harmless. We agree with the state and conclude that the defendant has not established a violation of his sixth and fourteenth amendment rights.

Because the defendant never claimed at trial that evidence of R's pending criminal charges was admissible for impeachment purposes under § 6-5 of the Connecticut Code of Evidence, this particular evidentiary claim is unpreserved. See, e.g., *State* v. *Devalda*, supra, 306 Conn. 517–18; see also Practice Book § 5-5 ("[w]henever an objection to the admission of evidence is made, counsel shall state the grounds upon which it is claimed or upon which objection is made, succinctly and in such form as he or she desires it to go upon the record, before any discussion or argument is had"). Nonetheless, the defendant alternatively requests review under *Golding*. With respect to *Golding*'s first two prongs, we conclude that the record, which contains the full transcript of the trial proceedings, is adequate for our review and that the claim is of constitutional magnitude because it implicates the defendant's sixth and fourteenth amendment rights to confront and cross-examine his accusers, and to present a defense. See, e.g., *State* v. *Luna*, 208 Conn. App. 45, 67–68, 262 A.3d 942, cert. denied, 340 Conn. 917, 266 A.3d 146 (2021). Accordingly, the defen-

---

[9] "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original; footnote omitted.) *State* v. *Golding*, supra, 213 Conn. 239–40; see *In re Yasiel R.*, supra, 317 Conn. 781 (modifying third prong of *Golding*).

State *v.* Velasquez-Mattos

dant's constitutional claim is reviewable, and we address it under the third prong of *Golding*, namely, whether the alleged constitutional violation exists and whether it deprived the defendant of a fair trial. See *State* v. *Golding*, supra, 213 Conn. 240; see also *In re Yasiel R.*, supra, 317 Conn. 781.

"The following principles guide our analysis of this claim. The right of confrontation is the right of an accused in a criminal prosecution to confront the witnesses against him. . . . The primary interest secured by confrontation is the right to cross-examination . . . and an important function of cross-examination is the exposure of a witness' motivation in testifying. . . . Cross-examination to elicit facts tending to show motive, interest, bias and prejudice is a matter of right and may not be unduly restricted. . . . The right of confrontation is preserved if defense counsel is permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness. . . .

"Although it is within the trial court's discretion to determine the extent of cross-examination and the admissibility of evidence, the preclusion of sufficient inquiry into a particular matter tending to show motive, bias and interest may result in a violation of the constitutional requirements . . . of the sixth amendment. . . . This court has held repeatedly that [e]vidence tending to show the motive, bias or interest of an important witness is never collateral or irrelevant. It may be . . . the very key to an intelligent appraisal of the testimony of the [witness]. . . . [W]hether . . . limitations on impeachment, including cross-examination, [were] so severe as to violate [the defendant's rights under] the [sixth amendment] . . . is a question of law [that is] reviewed de novo. . . .

State *v.* Velasquez-Mattos

"It bears emphasis that, although restrictions on the scope of cross-examination are within the trial court's sound discretion, this discretion comes into play only after the defendant has been permitted cross-examination sufficient to satisfy the sixth amendment. . . . [A] claim that the trial court unduly restricted cross-examination generally involves a two-pronged analysis: whether the aforementioned constitutional standard has been met, and, if so, whether the court nonetheless abused its discretion . . . . Constitutional concerns are at their apex when the trial court restricts a defendant's ability to cross-examine a key government witness." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *State* v. *Juan A. G.-P.*, 346 Conn. 132, 166–68, 287 A.3d 1060 (2023).

"[W]hether a trial court's . . . restriction of a . . . [witness'] testimony in a criminal trial deprives a defendant of his [constitutional] right to present a defense is a question that must be resolved on a [case-by-case] basis. . . . The primary consideration in determining whether a trial court's ruling violated a defendant's right to present a defense is the centrality of the excluded evidence to the claim or claims raised by the defendant at trial. . . . In order to determine whether a defendant's constitutional right to cross-examination has been satisfied, [w]e consider the nature of the excluded inquiry, whether the field of inquiry was adequately covered by other questions that were allowed, and the overall quality of the cross-examination viewed in relation to the issues actually litigated at trial." (Citation omitted; internal quotation marks omitted.) *State* v. *Torres*, 343 Conn. 208, 217–18, 273 A.3d 163 (2022).

We conclude that the defendant's claim fails under the third prong of *Golding* because the defendant has not shown that a constitutional violation exists. See, e.g., id., 218–19 (defendant's rights of confrontation and to present defense were not violated because he was

State *v.* Velasquez-Mattos

permitted to present his version of events to jury and
to elicit essential facts from which jury could assess
witness' credibility); *State* v. *Andrews*, 313 Conn. 266,
277–78, 96 A.3d 1199 (2014) (there was no violation of
defendant's constitutional rights, even though excluded
witness would have corroborated his testimony regard-
ing inheritance and might have been more credible,
because that point "was not disputed" and "was not a
central issue in the case," as it was completely unrelated
to defense).

During his cross-examination of R, defense counsel
was permitted to sufficiently explore the theory of
defense, namely, that no sexual acts had occurred and
that J's allegations were entirely fabricated. By eliciting
evidence that R had told police detectives that T had
used "reverse psychology" on J, defense counsel was
permitted to sufficiently cross-examine R to satisfy the
mandates of the sixth and fourteenth amendments
under the circumstances of this case. Defense counsel's
reference to the forgery charges, without any mention
of R's motive, bias, or interest for testifying for the
state, indicates that he intended to impeach R's credibil-
ity only, and the trial court properly excluded evidence
of R's pending charges in accordance with § 6-7 on that
basis. See footnote 8 of this opinion. Defense counsel
also was permitted to elicit evidence that R had two
felony convictions, and the trial court, in addition to
instructing the jury that R had two felony convictions,
reminded defense counsel that he "could attack or chal-
lenge any witness' credibility, motivation, [or] bias at
any time" during his cross-examination of R. Accord-
ingly, the defendant's claim fails under the third prong
of *Golding*.

III

The defendant's final claim is that a new trial is
required with respect to his conviction of sexual assault

State *v.* Velasquez-Mattos

in the first degree because that charge was duplicitous and violated his sixth amendment right to jury unanimity in light of this court's recent decisions in *State* v. *Douglas C.*, supra, 345 Conn. 421, and *State* v. *Joseph V.*, supra, 345 Conn. 516. He contends that, as in *Joseph V.*, the duplicity violation created a "genuine possibility that the conviction occurred as the result of different jurors concluding that the defendant committed different acts," thereby prejudicing him. The defendant relies on the trial court's all-inclusive definition of "sexual intercourse''—which was consistent with the prosecutor's closing argument that the statutory definition includes "any type of sexual . . . intercourse'' or "any other kind of penetration''—as well as the presence— via the constancy testimony of M and T—of an act that J had not expressly accused the defendant of committing, namely, fellatio, to demonstrate the substantial risk of a nonunanimous verdict. He also contends that this case is not one in which the duplicitous count was based only on general testimony that the jury would either credit or discredit in its entirety, because J testified about at least three specific incidents that took place over the course of three months. See *State* v. *Joseph V.*, supra, 552–54.

The state's response is threefold. First, the state argues that there was no violation of the right to jury unanimity explicated in *Douglas C.* and *Joseph V.* because that right is not one against duplicitous charges categorically but, rather, the right to seek recourse for any duplicity in a charge, which the defendant did not request in this case. Consistent with this argument, the state next contends that defense counsel's affirmative acceptance of the proposed jury instructions, which did not include a specific unanimity instruction, resulted in a waiver of any right to a remedy or a bill of particulars under *State* v. *Kitchens*, supra, 299 Conn. 447, which would preclude *Golding* review of this unpre-

State *v.* Velasquez-Mattos

served claim. See footnote 9 of this opinion. Third, and
alternatively, the state contends that the defendant has
not shown prejudice because, unlike in *Joseph V.*, J's
testimony provided only a generic description of undif-
ferentiated incidents, with a specific demarcation only
of the final instance on October 2, 2014, on which the
state relied in its closing argument. In addition, because
the theory of the defense was that no sexual acts
occurred, without any differentiation among alleged
instances, the jury was required to decide whether J
was subjected to the sexual assaults or had fabricated
them entirely. The state further argues that the allega-
tions of fellatio discussed in the constancy testimony
of M and T did not prejudice the defendant in this
respect, given the generalized nature of the constancy
evidence and the presumption that the jury followed
the limiting instruction not to consider that constancy
testimony substantively. With that testimony so limited,
the state observes, the only substantive evidence of
fellatio consisted of statements contained in the medi-
cal report from the hospital where J was examined
following his disclosure, which the defendant himself
offered into evidence.[10] We agree with the state and
conclude that, although the defendant did not waive
his right to jury unanimity as to instances of conduct
pursuant to *Kitchens*, the defendant nevertheless was
not prejudiced by the uncured violation and, therefore,
is not entitled to a new trial.

"Duplicity occurs when two or more offenses are
charged in a single count of the accusatory instrument.
. . . [A] single count is not duplicitous merely because
it contains several allegations that could have been

---

[10] The defense admitted into evidence J's medical record from the hospital
visit on the day that M notified the police of the alleged abuse. The medical
record provides in relevant part: "After [M] witnessed the [defendant] kiss
[J's] neck and confronted him, [J] eventually revealed to [M] that [the defen-
dant] had performed both oral sex and anal intercourse on him [four] days
ago. . . ."

stated as separate offenses. . . . Rather, such a count
is . . . duplicitous [only when] the policy considera-
tions underlying the doctrine are implicated. . . .
These [considerations] include avoiding the uncertainty
of whether a general verdict of guilty conceals a finding
of guilty as to one crime and a finding of not guilty as
to another, avoiding the risk that the jurors may not
have been unanimous as to any one of the crimes charged,
assuring the defendant adequate notice, providing the
basis for appropriate sentencing, and protecting against
double jeopardy in a subsequent prosecution. . . . A
duplicitous information [implicating a defendant's right
to jury unanimity], however, may be cured either by a
bill of particulars or a specific unanimity instruction.''
(Citations omitted; internal quotation marks omitted.)
*State* v. *Douglas C.*, supra, 345 Conn. 433–34.

To determine whether a defendant was entitled to a
specific unanimity charge, we apply the three-pronged
test articulated in *Douglas C.* and applied in *Joseph V.*:
''(1) Considering the allegations in the information and
the evidence admitted at trial, does a single count charge
the defendant with violating a single statute in multiple,
separate instances? (2) If so, then does each instance
of conduct establish a separate violation of the statute?
If the statute contemplates criminalizing a continuing
course of conduct, then each instance of conduct is not
a separate violation of the statute but a single, continu-
ing violation. To determine whether the statute contem-
plates criminalizing a continuing course of conduct,
we employ our well established principles of statutory
interpretation. Only if each instance of conduct consti-
tutes a separate violation of the statute is a count duplic-
itous. And (3) if duplicitous, was the duplicity cured by
a bill of particulars or a specific unanimity instruction?
If yes, then there is no unanimity issue. If not, then a
duplicitous count violates a defendant's right to jury
unanimity but reversal of the defendant's conviction is

State *v.* Velasquez-Mattos

required only if the defendant establishes prejudice.''
Id., 448; accord *State* v. *Joseph V.*, supra, 345 Conn.
531–32. ''Although we generally review the denial of a
motion for a bill of particulars for abuse of discretion
. . . because this claim is premised on an alleged
infringement of the defendant's constitutional rights,
our review is plenary.'' (Internal quotation marks omit-
ted.) *State* v. *Joseph V.*, supra, 529.

Because it is undisputed that the single sexual assault
charge in this case was duplicitous, insofar as it was
premised on multiple acts,[11] each of which would have
been a separate violation of § 53a-70 (a) (2), and that
the violation was not cured by a bill of particulars or
specific unanimity instruction, we consider only whether
the defendant has established that the duplicitous
charges prejudiced him.

A

Review of the defendant's duplicity claim under *Gold-
ing*, and particularly whether the failure to provide a
specific unanimity instruction requires reversal, turns
on whether defense counsel's failure to object to the
jury charge[12] means that the defendant implicitly waived
his right to an unanimity instruction pursuant to *Kitch-
ens*. See *State* v. *Bellamy*, 323 Conn. 400, 437, 147 A.3d
655 (2016) (''[a]n unpreserved constitutional claim that
has not been waived under *Kitchens* may be afforded
*Golding* review'').

_____

[11] The long form information charged the defendant with, among other
crimes, one count of sexual assault in the first degree for conduct occurring
''on or about diverse dates between August, 2014, [through] October, 2014,''
alleging that the victim was under thirteen years of age and the actor was
more than two years older, in violation of § 53a-70 (a) (2).

[12] The defendant did not file a request to charge that included a specific
unanimity instruction. Further, at the close of evidence, neither the state
nor the defense took any exceptions or made any objections to the trial
court's proposed jury instructions.

State *v.* Velasquez-Mattos

"[W]aiver is an intentional relinquishment or abandonment of a known right or privilege. . . . It involves the idea of assent, and assent is an act of understanding. . . . The rule is applicable that no one shall be permitted to deny that he intended the natural consequences of his acts and conduct. . . . In order to waive a claim of law it is not necessary . . . that a party be certain of the correctness of the claim and its legal efficacy. It is enough if he knows of the existence of the claim and of its reasonably possible efficacy." (Internal quotation marks omitted.) *State* v. *Kitchens*, supra, 299 Conn. 469. Among the rights that may be waived by the action of counsel in a criminal trial is the right of a defendant to correct jury instructions, even when fundamental rights are at issue. See id., 467–68. This court reaffirmed the *Kitchens* waiver rule, and the policy grounds on which the court relied,[13] in *State* v. *Bellamy*, supra, 323 Conn. 418–19, in which we explained that a *Kitchens* waiver is consistent with the well established principle that "the waiver of a procedural right constitutes the waiver of all of the claims within it."

Citing the discussion of this point in *State* v. *Bellamy*, supra, 323 Conn. 433 n.22,[14] the state argues that, although

---

[13] These policy grounds include "(1) the presumption that counsel is competent, (2) the rules of practice that provide for counsel's participation in the crafting of instructions, (3) the rules of fairness that place responsibility with the trial court and counsel to ensure that the instructions are correct, and (4) the existence of habeas review as a potential safety net." *State* v. *Bellamy*, supra, 323 Conn. 423.

[14] See *State* v. *Bellamy*, supra, 323 Conn. 433 n.22 ("To the extent the defendant claims that habeas review does not eliminate the unfairness of finding implied waiver in cases in which counsel challenges an aspect of settled law on direct appeal that was not challenged in the trial proceedings, we note that the defendant is in the same position as all other defendants to whom the law has applied in the past. Moreover, there is nothing to prevent trial counsel from challenging settled law in the trial proceedings, thereby preserving the claim for appellate review. . . . We nonetheless leave the merits and a full discussion of this argument for another day, when such a claim is presented to this court on direct appeal." (Citation omitted.)).

State *v.* Velasquez-Mattos

our decisions in *Douglas C.* and *Joseph V.* were issued after the completion of the defendant's trial in the present case, defense counsel nevertheless failed to preserve this claim for appellate review because he *could have* challenged settled law at the time but did not. The state further contends that our case law and federal precedent have long recognized claims of duplicity as to instances of conduct. Additionally, the state posits that defense counsel's decision to accept the existing jury instructions could have been strategic, insofar as not requesting a specific unanimity charge could well have prevented the jury from focusing on one particular act of sexual abuse, or could have dissuaded the state from charging the defendant with multiple counts of sexual assault, each premised on a separate instance of conduct, which would have increased the defendant's potential sentencing exposure. See *State* v. *Kitchens*, supra, 299 Conn. 479–80 (discussing line of cases finding waiver when defense counsel did not object to jury instruction "for what clearly appeared . . . to have been tactical reasons"). We disagree with the state and conclude that the defendant did not implicitly waive his right to jury unanimity pursuant to *Kitchens* by failing to object to the proposed jury instructions.

As we explained in *Kitchens*, because the waiver of a constitutional challenge to jury instructions "is implied rather than express, it arises from an inference that the defendant knowingly and voluntarily relinquished the right in question." (Internal quotation marks omitted.) *Lapointe* v. *Commissioner of Correction*, 316 Conn. 225, 312, 112 A.3d 1 (2015). "This requirement ordinarily is met easily because it is presumed that, in our adversary system, counsel was familiar with the relevant constitutional principles and had acted competently in determining that . . . the defendant's [constitutional] rights were protected. . . . Consequently, to demonstrate knowing and intelligent waiver, the state ordi-

State *v.* Velasquez-Mattos

narily is not required to establish that defense counsel was aware of a possible constitutional claim in the factual scenario presented . . . . To demand more would require the trial court to canvass defense counsel with respect to counsel's understanding of the relevant constitutional principles before accepting counsel's agreement on how to proceed . . . [and] there is nothing in our criminal law that supports such a requirement.'' (Citations omitted; internal quotation marks omitted.) *State* v. *Culbreath*, 340 Conn. 167, 181–82, 263 A.3d 350 (2021); see *State* v. *Bellamy*, supra, 323 Conn. 418–19.

Nevertheless, ''when the law governing a defendant's constitutional claim has changed after the defendant's trial, counsel acting under binding precedent in effect at the time of the trial cannot make a knowing and intelligent waiver of rights affected by the later decision changing the law.'' *State* v. *Johnson*, 345 Conn. 174, 188–89, 283 A.3d 477 (2022). This is consistent with the principle that, ''at a minimum, all defendants whose cases [are] still pending on direct appeal at the time of [a law changing] decision should be entitled to invoke the new rule.'' (Internal quotation marks omitted.) *Griffith* v. *Kentucky*, 479 U.S. 314, 322, 107 S. Ct. 708, 93 L. Ed. 2d 649 (1987). ''If we do not resolve all cases before us on direct review in light of our best understanding of governing constitutional principles, it is difficult to see why we should so adjudicate any case at all.'' (Internal quotation marks omitted.) Id., 323; see *O'Connor* v. *Ohio*, 385 U.S. 92, 93, 87 S. Ct. 252, 17 L. Ed. 2d 189 (1966) (reversing Ohio Supreme Court's decision that petitioner was not entitled to benefit from new constitutional rule based on failure to raise claim below because ''his failure to object to a practice [that] Ohio had long allowed [could not] strip him of his right to attack the practice following its invalidation by [the United States Supreme] Court'').

State *v.* Velasquez-Mattos

This court's recent decision in *State* v. *Culbreath*, supra, 340 Conn. 167, squarely controls our resolution of the *Kitchens* waiver issue in this case. In *Culbreath*, we held that defense counsel did not make a knowing and intelligent waiver of the state constitutional claim raised on appeal by the defendant, Jesse Culbreath, because the law governing that claim had changed after Culbreath's trial. Id., 182–85. After the jury returned its verdict in Culbreath's trial, we released our decision in *State* v. *Purcell*, 331 Conn. 318, 320–21, 203 A.3d 542 (2019), in which we held for the first time that the Connecticut constitution requires police officers to clarify an ambiguous request for counsel before they can continue an interrogation, thus providing greater protection for a criminal defendant's rights under *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), than the federal constitution. See *State* v. *Culbreath*, supra, 183–84. Accordingly, "we [could not] presume that defense counsel knew that the state constitution would subsequently be interpreted to provide an additional layer of prophylaxis to prevent a significant risk of deprivation of those vital . . . rights protected under *Miranda*." (Internal quotation marks omitted). *State* v. *Culbreath*, supra, 184; see, e.g., *State* v. *Johnson*, supra, 345 Conn. 189 (because defendant arguably would not have had colorable confrontation clause claim under subsequently reversed Appellate Court decision at time of trial, defense counsel's failure to object did not constitute waiver).

In *State* v. *Douglas C.*, supra, 345 Conn. 421, we recognized for the first time that a duplicitous information may yield two distinct and separate kinds of unanimity claims, and we adopted the federal test for claims of unanimity as to instances of conduct. See id., 441; see also *State* v. *Joseph V.*, supra, 345 Conn. 531 ("Previously, our appellate courts [had] not distinguished between [unanimity as to elements and unanimity as

State *v.* Velasquez-Mattos

to instances of conduct]. In *Douglas C.*, however, we explained that different tests apply . . . .''). Similarly, in *State* v. *Joseph V.*, supra, 550–51, we concluded for the first time that the sexual assault statute, § 53a-70, with which the defendant in this case was charged, does not criminalize a continuing course of conduct. Thus, in light of the recent and significant change in our case law that occurred after the completion of the defendant's trial, we conclude that defense counsel did not make a knowing and intelligent waiver of the right to unanimity as to instances of conduct pursuant to *Kitchens*, and, accordingly, we address whether a constitutional violation exists for purposes of *Golding* review.

B

Whether the defendant's duplicity claim requires reversal depends on whether the lack of a specific unanimity charge or bill of particulars ultimately prejudiced him. See *State* v. *Douglas C.*, supra, 345 Conn. 447–48 (discussing third prong of test analyzing prejudice, namely, whether "the duplicity created the genuine possibility that the conviction [occurred as the result of] different jurors concluding that the defendant committed different acts"). The record demonstrates that the prosecutor explored multiple instances of sexual conduct during the state's case-in-chief. J testified in detail as to the "first time" that the defendant touched him inappropriately, and J subsequently testified that the defendant had touched him or asked him to touch the defendant approximately four to six times. J also testified in detail as to an occasion when he was "in [the defendant's] bedroom and something happened with [J's] behind . . . ." J stated that "the thing with [his] butt happen[ed]" approximately five times.[15] On cross-

_____

[15] R also testified about these two specific occurrences on direct examination. Before providing her constancy of accusation testimony, M testified about the October 2, 2014 incident, during which she and R heard J scream from the defendant's downstairs apartment and then found the defendant following J upstairs.

State *v.* Velasquez-Mattos

examination, defense counsel asked J whether "the thing with [his] butt happen[ed] on the Wednesday or Thursday before that Monday—before the weekend," and J responded that "it was on the Thursday." On redirect examination, the prosecutor clarified that the Thursday to which defense counsel was referring was October 2, 2014, and, during closing argument, the prosecutor explained to the jury the legal definition of "sexual intercourse."[16]

During closing argument, defense counsel drew attention to accounts of the incident from J, M, and R with respect to "October 2, which [was] a Thursday . . . ." He also observed that "[w]e have a case alleging sexual assault with sexual intercourse, anal penetration . . . ." He continued: "Now, you [have] heard [J] testify that he was raped multiple times; he couldn't tell you how many. Sometimes it was three, sometimes it was five, sometimes it was six, sometimes it was every day." The trial court then instructed the jury that, to find the defendant guilty of sexual assault in the first degree, the state had to prove that the defendant had engaged in sexual intercourse, meaning "vaginal intercourse, anal intercourse, fellatio, or cunnilingus."

The starting point of our analysis of whether the defendant has shown that the duplicitous charges

---

[16] The prosecutor explained that "[s]exual intercourse under the law in this area is defined in a variety of manners . . . . It's [defined as] vaginal, anal, fellatio, cunnilingus, any type of sexual . . . intercourse. . . . In this case, what the state is alleging is anal intercourse or any other kind of penetration. You heard testimony from [J] in regard to what happened to him . . . that Thursday afternoon [when] the defendant placed his penis into [J's] anus . . . that it went in or that it went halfway in. If you find that testimony to be credible, then the crime of sexual assault in the first degree has occurred and concluded." See General Statutes (Rev. to 2015) § 53a-65 (2) (" 'Sexual intercourse' means vaginal intercourse, anal intercourse, fellatio or cunnilingus between persons regardless of sex. Penetration, however slight, is sufficient to complete . . . anal intercourse . . . ." ").

State *v.* Velasquez-Mattos

caused him prejudice is our recent decision in *Joseph V.* In that case, the defendant claimed, inter alia, that the count of the information charging him with sexual assault in the first degree was duplicitous. Id., 521–22, 538–39. At trial, the victim and a witness testified about four distinct incidents of abuse by the defendant; id., 539; and the victim also testified that there were many other occurrences that "had blurred together because there [were] too many to count and distinguish between." (Internal quotations marks omitted.) Id., 525. Defense counsel in that case extensively cross-examined both the victim and the witness regarding the specific details for each of the four incidents. Id., 539, 556, 557 n.21. During closing argument, the prosecutor summarized the four specific instances of sexual abuse and highlighted the repeated nature of the conduct, while also arguing "that the jury only had to believe it happened once . . . to satisfy the element of sexual intercourse." (Internal quotation marks omitted.) Id., 539. In response, defense counsel argued that the victim and the witness lacked credibility and also highlighted the inconsistencies in their testimony as to each of the four instances of abuse. Id., 539–40. Consequently, defense counsel in that case requested a bill of particulars and a specific unanimity instruction, which the trial court declined to grant. Id., 524–25.

Applying the three-pronged test that we adopted in *Douglas C.*, we concluded that a new trial was required because the defendant suffered prejudice as a result of the trial court's denial of his request for a bill of particulars or a specific unanimity instruction, thereby violating the defendant's constitutional right to jury unanimity. See id., 528–29; see also id., 531–32. We reasoned that, "in light of the specific nature of the testimony and defense counsel's extensive cross-examination and closing argument directed at *unique credibility concerns related to each incident, as well as the prosecutor's closing*

State *v.* Velasquez-Mattos

*argument that any of the alleged incidents would estab-*
*lish the element of sexual intercourse . . .* [t]he
duplicitous nature of [the first degree sexual assault]
count . . . created the potential for the [jurors] to be
confused or to disagree about which of the various acts
of sexual intercourse the defendant committed, thereby
prejudicing him.'' (Emphasis added; footnote omitted.)
Id., 556–57.

Although *Joseph V.* is the only decision applying the
test articulated in *Douglas C.*, the Appellate Court's
previous decision in *State* v. *Saraceno*, 15 Conn. App.
222, 545 A.2d 1116, cert. denied, 209 Conn. 823, 552
A.2d 431 (1988), and cert. denied, 209 Conn. 824, 552
A.2d 432 (1988), is also instructive. See *State* v. *Joseph*
*V.*, supra, 345 Conn. 553–56. In *Saraceno*, the defendant
claimed that his conviction of two counts of sexual
assault in the second degree, each of which alleged
the commission of a single crime based on multiple,
separate incidents of sexual assault, prejudiced him
because they were duplicitous. See *State* v. *Saraceno*,
supra, 225 n.1, 228; see also *State* v. *Joseph V.*, supra,
553. Upholding the conviction, the Appellate Court rea-
soned that, because of the victim's age and ''relative
inability to recall with specificity the details of separate
assaults, the jury was not presented with the type of
detail laden evidence [that] would engender differences
of opinion on fragments of her testimony. In other
words, the bulk of the state's case rested on the credibil-
ity of the young complainant. When she testified, for
example, that on many occasions the defendant forced
her to engage in fellatio while in a motor vehicle parked
on the banks of the Connecticut River, the jury was
left, primarily, only with the decision of whether she
should be believed. With such general testimony, the
[specter] of lack of unanimity cannot arise.'' *State* v.
*Saraceno*, supra, 230. The jury was also ''adequately
warned that it was required to render a unanimous

State *v.* Velasquez-Mattos

verdict on at least a single violation of the statute alleged in each count in order to [find] the defendant [guilty].'' Id., 230–31.

Although the defendant in the present case contends that J testified to at least three specific, discrete incidents that took place over the course of several months, our review of the record reveals that J testified to two specific instances of conduct as examples of the reoccurring sexual activity—the first being the "first time" and the second being when "something happened with [J's] behind''—with only the latter instance containing allegations of sexual intercourse within the meaning of the sexual assault statute. See footnote 16 of this opinion. J testified that the "first time" that the defendant had been inappropriate with him was when the defendant touched J's penis and forced J to touch the defendant's penis for about ten seconds. See part I of this opinion. J then testified about, and both the prosecutor and defense counsel focused their examinations on throughout the trial, the October 2, 2014 incident, when the defendant anally penetrated J's "behind.'' See id. Specifically, on cross-examination, defense counsel asked J about "the *one that happened on Thursday*,'' and, on redirect examination, the prosecutor clarified that the Thursday that defense counsel was referring to was October 2, 2014. (Emphasis added.)

Beyond the evidence focusing on the sexual assault allegations on Thursday, October 2, 2014, at trial, the defendant in the present case advanced essentially the same defense that the defendant advanced in *Joseph V.*, namely, that the victim and witness or witnesses lacked credibility. See *State* v. *Joseph V.*, supra, 345 Conn. 539. However, unlike in the present case, defense counsel in *Joseph V.* "extensive[ly]'' cross-examined the victim and the witness regarding the specifics of *each of the three particular incidents* of conduct, argued in closing the unique credibility concerns relating to *each*

*incident*, and attacked the prosecutor's closing argument that *any* of the alleged incidents would establish the element of sexual intercourse. See id., 556–57 and n.21; see also id., 557 n.21 ("[t]he primary focus of the trial was on these specific incidents of conduct"). In contrast to *Joseph V.*, the record in the present case demonstrates that the state presented substantial evidence of one specific instance of sexual intercourse to serve as an exemplar of the ongoing sexual abuse that J had endured at the hands of the defendant.

Although neither the information nor the jury charge indicated which instance of sexual intercourse the first degree sexual assault charge was based on, the prosecutor specified during closing argument that the state was relying on the October 2, 2014 incident as the basis for that charge, and the prosecutor's direct examination of J, M, T, and R was consistent with that approach. During closing argument, defense counsel also attacked the testimony of J, M, and R regarding the October 2, 2014 incident, while maintaining that J had fabricated the abuse entirely. Thus, the risk of prejudice to the defendant was minimized when, as in this case, the defendant utilized the same theory of defense for both the single specific incident alleged and the general conduct alleged, namely, that the sexual abuse never happened and that it was entirely fabricated. Put differently, there was no realistic possibility of juror confusion or disagreement concerning the multiple incidents because the jurors were required either to find that the allegations were fabricated and that no sexual conduct ever occurred at all, or to believe J's testimony, as corroborated by the other witnesses, that anal penetration had in fact occurred on October 2, 2014. Compare *State* v. *Hufford*, 205 Conn. 386, 397, 533 A.2d 866 (1987) (there was no prejudice when defense was simple denial that incident had ever occurred, and defendant did not assert that he would have changed his defense if infor-

State *v.* Velasquez-Mattos

mation had charged him with each alternative in separate counts or in conjunctive), with *Jackson* v. *State*, 342 P.3d 1254, 1256, 1258–59 (Alaska App. 2014) (prejudice existed because defense clearly differentiated between vaginal and anal penetration, asserting that one was consensual and one was accidental), and *State* v. *Trujillo*, 296 Kan. 625, 630, 294 P.3d 281 (2013) ("cases not containing a unified defense are reversed" (internal quotation marks omitted)). Likewise, J was only ten years old when he testified and approximately eight or nine years old when the abuse took place. See *State* v. *Saraceno*, supra, 15 Conn. App. 230 (relying on victim's age and "relative inability to recall with specificity the details of separate assaults" in upholding conviction).

Although M and T testified as constancy witnesses that J had disclosed acts of fellatio, the jury was specifically instructed not to consider that fact substantively, and, in the absence of evidence to the contrary, the jury is presumed to have followed that instruction. See, e.g., *State* v. *Holley*, 327 Conn. 576, 629, 175 A.3d 514 (2018). Moreover, the only substantive evidence of fellatio was contained in the medical report, which was an exhibit that the defendant himself placed before the jury. See id., 620 ("the defendant cannot successfully challenge the admission of evidence when he was responsible for placing that evidence before the jury" (internal quotation marks omitted)); see also footnote 10 of this opinion. We therefore conclude that, because the defendant was not prejudiced by the uncured violation of his right to jury unanimity as to instances of conduct, there was no constitutional violation, and the defendant is not entitled to a new trial.

The judgment is affirmed.

In this opinion the other justices concurred.