******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* JAQUAN WADE
## (AC 44898)

Elgo, Suarez and Clark, Js.

*Syllabus*

The defendant, who had been convicted of conspiracy to commit murder, appealed to this court from the judgment of the trial court revoking his probation and sentencing him to thirteen years of imprisonment. The defendant had signed a form that contained conditions of probation that required, inter alia, that he not violate any criminal laws of this state. Thereafter, the defendant's probation officer received information that the defendant was a suspect in a home invasion. In the warrant application for the defendant's arrest, a police officer indicated that the defendant had been positively identified in a photographic array by R, a complaining witness to the home invasion. Prior to the probation revocation hearing, the defendant filed three motions with the court, seeking to suppress evidence of the photographic array identification as well as any testimony related to R's statements surrounding his identification of the defendant throughout the course of the investigation into the home invasion. The defendant specifically asked the court to engage in the balancing test referenced in *State* v. *Crespo* (190 Conn. App. 639), weighing the defendant's interest in confronting R against the state's reasons for not producing R and the reliability of the proffered hearsay, and to preclude testimony from any witness regarding R's identification of the defendant if the state did not present R as a witness. The state later located and offered to produce R, but he indicated that, if he were called to testify, he would invoke his fifth amendment right against self-incrimination and, thus, the court found that he was unavailable to testify. After the court's determination that R was unavailable, defense counsel argued that *Crespo* no longer applied and that the defendant's right to due process would be violated by the court's consideration of unreliable hearsay and a total inability to confront R. The court denied the defendant's motions and engaged in an evaluation of the reliability of the exhibits and subsequent testimony, finding them to be sufficiently reliable. The court found that the defendant had violated the terms of his probation. *Held*:

1. This court declined to consider the merits of the defendant's claim that the trial court violated his due process right to confrontation under the fourteenth amendment when it failed to apply the balancing test referenced in *Crespo*, the defendant having abandoned that claim: although the defendant maintained his objection to the admission of R's identification evidence based on a due process right to confrontation, defense counsel acknowledged during the probation revocation hearing that, because R ultimately was unavailable due to his invocation of his right to remain silent, the "whole issue" was "reliability," as R had consumed both marijuana and alcohol on the night of the home invasion; moreover, the record reflected that defense counsel changed tactics after R invoked his fifth amendment rights, disclaimed his initial request that the court apply the *Crespo* balancing test and stated that "circumstances have changed."

2. The trial court did not abuse its discretion in admitting certain hearsay evidence relating to R's identification of the defendant; the court engaged in sufficient review and evaluation of the hearsay evidence to conclude that that evidence was relevant, reliable and probative, including that, R, in audiovisual recordings, identified the defendant with a high degree of confidence and did not significantly vary in his explanation of what happened or how he knew it was the defendant, that R's identification was corroborated by other evidence, that R's descriptions to the police of the home invasion included a number of statements against penal interest, and that a video recording of the double-blind photographic array identification revealed nothing unduly suggestive about the procedure.

Argued March 8—officially released October 3, 2023

Substitute information charging the defendant with violation of probation, brought to the Superior Court in the judicial district of Fairfield, geographical area number two, and tried to the court, *Hernandez, J.*; judgment revoking the defendant's probation, from which the defendant appealed to this court. *Affirmed.*

*Erica A. Barber*, assistant public defender, for the appellant (defendant).

*Meryl R. Gersz*, deputy assistant state's attorney, with whom, on the brief, were *Joseph T. Corradino*, state's attorney, and *Joseph J. Harry*, senior assistant state's attorney, for the appellee (state).

*Opinion*

ELGO, J. The defendant, Jaquan Wade, appeals from the judgment of the trial court revoking his probation and imposing a sentence of thirteen years of incarceration.[1] On appeal, the defendant argues that the due process clause of the fourteenth amendment to the federal constitution prohibited the admission of a witness' out-of-court statements at his probation revocation hearing because the witness was not present and available for cross-examination. The defendant claims that the court improperly failed to implement the balancing test referenced in *State* v. *Crespo*, 190 Conn. App. 639, 647, 211 A.3d 1027 (2019), when it admitted the witness' out-of-court statements relating to the identification of the defendant in order to establish that the defendant violated the condition of his probation that he not violate any criminal laws. The defendant thus contends that, without this improper hearsay evidence, the evidence was insufficient to support the court's finding that he violated that condition.[2] We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the resolution of this appeal. The defendant was serving a term of probation pursuant to a sentence imposed in 2013 following his conviction for conspiracy to commit murder in violation of General Statutes §§ 53a-48 and 53a-54a (a). The defendant was sentenced to a total effective sentence of twenty years of incarceration, execution suspended after seven years, followed by five years of probation. In 2018, the defendant was released from the custody of the Department of Correction, signed a conditions of probation form,[3] and began serving his probation on February 23, 2018.

On May 14, 2019, the defendant's probation officer received information that the defendant was a suspect in a home invasion in Stratford in violation of the condition of probation that he not violate any criminal laws. On June 17, 2019, the court issued an arrest warrant for the defendant for violation of probation pursuant to General Statutes § 53a-32.[4] The defendant was arrested pursuant to that warrant on July 2, 2019.[5]

A probation revocation hearing was held over the course of two days in May, 2021. The state presented seven witnesses, including the defendant's probation officer, two eyewitnesses to the Stratford home invasion, and the detective who investigated the defendant's alleged involvement in the home invasion.

At the outset of the hearing, the defendant filed three motions with the court: (1) a motion to suppress identification testimony in connection with the home invasion; (2) a motion in limine to preclude testimony about the identification; and (3) a motion regarding his right to confront the home invasion complaining witness, Lawrence Rainey, at the violation of probation hearing.

Through these motions, the defendant sought to suppress evidence of a photographic array identification by Rainey and Rainey's statements surrounding his identification of the defendant throughout the course of the investigation. In the motion concerning his right to confrontation, the defendant specifically asked the court to engage in the balancing test referenced in *State* v. *Crespo*, supra, 190 Conn. App. 647, and to preclude any testimony from any witness regarding Rainey's identification of the defendant if the state did not present Rainey as a witness. The state filed an omnibus response to the defendant's motions, arguing that the Connecticut Code of Evidence does not apply to probation revocation hearings and that the defendant has no absolute right to confront witnesses in such proceedings. In the absence of an objection from the parties, the court opted to consider the evidence that was the subject of the pending motions during the course of the violation of probation hearing because the parties agreed that the same evidence would be the subject of the revocation hearing and the defendant's motions.

During the revocation hearing, the testimony included evidence of the defendant's alleged involvement in the home invasion that occurred in Stratford on May 13, 2019. The court heard testimony from two eyewitnesses to the incident: Eric Rodriguez and Rebecca Thompson. At the time of the incident, Rodriguez, Rainey, and a man named Angel were living in the home. According to Rodriguez, Rainey sold marijuana from the home and made several sales a day. Rodriguez and Thompson testified that, on the evening of May 12, 2019, the three men and Thompson were hanging out with several friends in the home, all drinking alcohol and smoking marijuana.[6] In the early morning hours of May 13, 2019, the only people remaining in the residence were Rodriguez and Thompson, who were on the couch in the living room, while Rainey was upstairs and Angel was upstairs asleep. At approximately 2 a.m., three men in masks and dark clothing entered the home unannounced. One man had a gun and two of the men held knives. The men with the knives ran upstairs where they encountered Rainey. Downstairs, the third man approached Rodriguez and Thompson with a gun and ordered them onto the ground. Rodriguez fought with the man for the gun and a scuffle occurred between the two that led into the kitchen. Once in the kitchen, the man dropped the gun, grabbed a knife, and attempted to stab Rodriguez. Rodriguez rushed toward the man and grabbed the blade of the knife and the man's wrist. The man pulled away and the knife cut Rodriguez' hand, resulting in serious injuries that required fifty-five stitches and at least one corrective surgery. The man then forced Rodriguez to his knees and held the knife to his throat. The intruder ordered Rodriguez and Thompson to lie on the ground in the kitchen and empty their pockets, from which the intruder took Rodriguez'

car keys and both of their cell phones. The altercation lasted approximately ten minutes and, shortly thereafter, all three men fled the home.

Rodriguez further testified that his friend, Rashaun Richards, previously asked Rodriguez to assist him with robbing Rainey. Additional investigation by the police department revealed that Richards' mother, who was also the defendant's stepmother, owned a vehicle that was at the home at the time of the incident and was used as the getaway car. Further, without objection from the defense, Detective Jason Delauri, the investigating officer for the home invasion, testified that Richards sent Facebook Messenger text messages to the defendant around the time of the incident, which indicated to Detective Delauri that Richards was acting "as a lookout" and appeared to warn the defendant when a car pulled up on the street. Richards was later arrested in connection with the home invasion. Over the defendant's objection,[7] Rodriguez also testified that, after the incident, Rainey told him that he had a hunch that an individual named Pharaoh Eaton and his friend committed the crime because Eaton and the friend came to the home to purchase marijuana from Rainey the day before and, during the home invasion, the men seemed to know where to go and the location of everything they intended to steal. The defendant's probation officer testified that the defendant told him that he needed money in order to travel to Texas and, in fact, the defendant was scheduled to leave for Texas on May 14, 2019, the day after the home invasion.

Detective Delauri also testified during the first day of the probation revocation hearing. At the time of Detective Delauri's testimony, the state was unable to locate Rainey and did not intend to call him as a witness. As a result, facts pertaining to Rainey's identification of the defendant primarily came from the testimony of Detective Delauri, who had interviewed Rainey. During Detective Delauri's testimony, the state sought to admit into evidence several exhibits relating to Rainey's identification of the defendant. The state offered (1) exhibit 4, the video recording of the police station interview between Detective Delauri and Rainey; (2) exhibit 5, the video recording of Rainey's identification of the defendant which occurred by means of a photographic array administered by Detective Todd Moore and presented to Rainey; and (3) exhibit 7, the photographic array presented to Rainey. Subject to the defendant's objections as to those exhibits and any related testimony, Detective Delauri was provisionally allowed to testify that, during his initial interview at police headquarters, Rainey indicated that, although he did not know the man's name at the time, he was able to identify one of the two suspects because he had contact with him one or two days prior to the incident when Eaton visited the home to purchase marijuana. Detective Delauri also testified that Rainey indicated that he was

able to see the person's face through the mask in order to recognize the individual and, at one point, Rainey identified a person with the nickname "Quan" as the person who accompanied Eaton to purchase marijuana on the day prior to the home invasion. On the basis of this information, Detective Delauri interviewed Rainey again, accompanied by Detective Moore, to conduct a photographic array to identify suspects for the home invasion. In a double-blind procedure,[8] Detective Moore showed Rainey a photographic array for identification, which contained the defendant's photograph. At that time, Rainey identified the defendant as the man involved in the home invasion.

In objecting to the entry of the proffered exhibits, as well as the state's questions and Detective Delauri's testimony regarding Rainey's identification of the defendant, the defendant asserted grounds of hearsay and a violation of his due process right to confrontation. In response, the court reserved ruling with respect to the admissibility of the evidence in order to review the audiovisual exhibits before the second day of the hearing.

At the close of evidence on the first day of the hearing, the court also heard arguments from the defense and the state regarding the defendant's motions. At that time, defense counsel specifically mentioned that, in his motion regarding the defendant's right to confrontation, he asked the court to engage in the balancing test referenced in *State* v. *Crespo*, supra, 190 Conn. App. 647. The defendant also directed the court's attention to § 53a-32 (c),[9] which enumerates a right to confrontation via cross-examination in violation of probation hearings. In acknowledging the balancing test, the court specifically asked the state what steps it took to locate the witness given that it was required to balance the defendant's confrontation right against the state's stated reason for not producing him. After the state indicated that it would need additional time to subpoena the witnesses relevant to the court's inquiry, the matter was subsequently continued for additional testimony on that issue.

On the second day of the hearing, the state offered to produce Rainey, who, after speaking with a special public defender, indicated that he intended to invoke his fifth amendment right against self-incrimination.[10] The court thus found that Rainey was unavailable to testify. After making this finding, the court heard from counsel on the defendant's motions. During argument, defense counsel argued that, "[a]t the time that [the] motions were filed and at the time of the first day of the hearing the circumstances were such that the state had been unable to identify, locate and speak with Mr. Rainey. Obviously, the circumstances have now changed. As we first addressed this morning the state did speak with Mr. Rainey. Counsel was appointed as

the court indicated, and Mr. Rainey has decided to assert his fifth amendment privilege against self-incrimination. . . . [T]he due process clause to the federal constitution is controlling here. The right of an accused in a criminal trial . . . is in essence the right to a fair opportunity to defend against the state's accusations, the right to confront and cross-examine witnesses have long been recognized as essential to due process. And that's what our argument is here.

"That . . . change in circumstance, the invocation of the fifth amendment right, has completely undermined [the defendant's] ability to engage in a meaningful cross-examination or confrontation with the critical witness in this circumstance. And, as such, the consideration of that evidence would amount to a violation of due process. . . .

"Our argument is simply that the evaluation of the confrontation rights here under the due process clause after doing so allow[ed] the state to benefit from that evidence to [the defendant's] detriment in that he could not confront the critical witness in this . . . case and not addressing the issue of probation at this time would violate his due process rights."

In response, the state asserted that the applicable evidentiary principles differ in a probation revocation hearing, specifically with regard to the defendant's right to confrontation. In support of its position, the state argued that the exhibits and testimony presented during the hearing were reliable and corroborated by the evidence and testimony from the two eyewitnesses. The state also argued that the court is required to make a finding of good cause only when the state does not call a witness. Thus, the state argued that, because Rainey was unavailable to both the state and defense counsel in the present case, the court is left only with a "balancing test between what [the court determines] as reliable and probative."

In his rebuttal argument, defense counsel responded that, with regard to the motion to suppress, "the whole issue there is reliability." The defendant then argued that the court should find the exhibits and any testimony stemming from those exhibits and Rainey's identification of the defendant to be unreliable. Specifically, defense counsel argued the following to the court:

"The state . . . referenced a balancing test from *Crespo*. And again, Your Honor, I think the circumstances have changed a bit. *Crespo* governs when the state . . . does not call a witness. And, up until Thursday at the conclusion of the hearing, the state had indicated it could not find Mr. Rainey, did not speak to Mr. Rainey. . . . The difference is . . . not that they're just not calling him as a witness, it's that he's now unavailable. . . . Effectively cross-examination, confrontation is denied there wholly and completely. . . .

The court's analysis is, I believe, governed by the due process clause of the federal constitution, which ensures minimum safeguards in connection with a hearing such as this one, a violation of probation hearing.

"And the minimum—a part of those minimum safeguards, as I mentioned enumerated in our statute but also in case law, are that there is at least a minimum right to confront evidence against you, cross-examine witnesses. And I understand the circumstances of a violation of probation hearing are different than that of a trial, we have established that. But, at a minimum, the consideration of this evidence which is ultimately the question, the consideration of this evidence, the identification procedure which, again, [its] reliability has been called into question." Defense counsel then stated that these factors combined—the unreliability of the evidence and the total inability to confront the complaining witness—weigh in the defendant's favor as to whether his due process rights would be violated.

Following these arguments, the court denied the defendant's motions. In so ruling, the court stated that "[t]he violation of probation proceeding is not a criminal proceeding, it's a hybrid proceeding. And the protections which are typically afforded to defendants in a criminal trial, while similar in a violation of probation hearing, are not the same. As I stated earlier, the court can consider information which is relevant and reliable." The court then engaged in an evaluation of the reliability of the exhibits and subsequent testimony, finding them to be sufficiently reliable. Specifically, the court found, inter alia, that (1) Rainey's identification of the defendant in the photographic array was consistent with his prior statements regarding identification and not unduly suggestive, (2) the corroborating facts and testimony from other witnesses supported reliability, and (3) Rainey's own statements against penal interest with respect to his selling marijuana further heightened the reliability and credibility of the hearsay evidence. The court thereafter found, by a fair preponderance of the evidence, that the defendant had violated the terms of his probation. It therefore revoked the defendant's probation and sentenced him to the remaining thirteen years of imprisonment that had been suspended.[11] This appeal followed.

I

On appeal, the defendant claims that the court violated his due process right to confrontation under the fourteenth amendment when it improperly failed to apply the balancing test referenced in *State* v. *Crespo*, supra, 190 Conn. App. 647, and allowed hearsay evidence and testimony concerning Rainey's identification of the defendant. In arguing that the court was required to conduct the balancing test during the probation revocation hearing, the defendant specifically refers to this court's precedent that, when the state declines to call a

witness to testify, "[t]he exercise of the right to confront adverse witnesses in a probation revocation proceeding is not absolute, but rather entails a balancing inquiry conducted by the court, in which the court 'must balance the defendant's interest in cross-examination against the state's good cause for denying the right to cross-examine. . . . In considering whether the court had good cause for not allowing confrontation or that the interest of justice [did] not require the witness to appear . . . the court should balance, on the one hand, [1] the defendant's interest in confronting the declarant, against, on the other hand, [2] the government's reasons for not producing the witness and [3] the reliability of the proffered hearsay.' " Id. The state argues in response that the defendant abandoned his claim that due process requires that the court employ the balancing test referenced in *Crespo*. We agree with the state.

We begin by setting forth the principles relevant to probation revocation proceedings. "Our Supreme Court has explained that probation is a penal alternative to incarceration, and its purpose is to provide a period of grace in order to aid in the rehabilitation of the individual. . . . It also noted that persons on probation do not enjoy absolute liberty but rather 'conditional liberty properly dependent on observance of special [probation] restrictions. . . . These restrictions are meant to assure that the probation serves [as] a period of genuine rehabilitation and that the community is not harmed by the probationer's being at large.' . . . This conditional liberty, however, is a privilege that once granted, constitutes a constitutionally protected interest. . . . The due process clause of the fourteenth amendment mandates certain minimum procedural safeguards before that conditional liberty interest may be revoked." (Citations omitted.) *State* v. *Polanco*, 165 Conn. App. 563, 570, 140 A.3d 230, cert. denied, 322 Conn. 906, 139 A.3d 708 (2016).

With respect to those minimum procedural safeguards, "[i]t is well established that the defendant is entitled to limited due process rights in a probation revocation proceeding. Probation revocation proceedings fall within the protections guaranteed by the due process clause of the fourteenth amendment to the federal constitution. . . . The revocation proceeding must comport with the basic requirements of due process because termination of that privilege results in a loss of liberty. . . . [T]he minimum due process requirements for revocation of [probation] include written notice of the claimed [probation] violation, disclosure to the [probationer] of the evidence against him, the opportunity to be heard in person and to present witnesses and documentary evidence, the right to confront and cross-examine adverse witnesses in most instances, a neutral hearing body, and a written statement as to the evidence for and reasons for [probation] violation. . . . Despite that panoply of requirements, a

probation revocation hearing does not require all of the procedural components associated with an adversarial criminal proceeding." (Internal quotation marks omitted.) *State* v. *Tucker*, 179 Conn. App. 270, 279–80, 178 A.3d 1103, cert. denied, 328 Conn. 917, 180 A.3d 963 (2018).

Specifically, with regard to the right to confrontation, "[i]n *State* v. *Shakir*, 130 Conn. App. 458, 467, 22 A.3d 1285, cert. denied, 302 Conn. 931, 28 A.3d 345 (2011), we noted that the due process safeguards are codified in Federal Rule of Criminal Procedure 32.1 and include 'an opportunity to . . . question any adverse witness *unless the court determines that the interest of justice does not require the witness to appear* . . . .' We further explained that the court must balance the defendant's interest in cross-examination against the state's good cause for denying the right to cross-examine. Id. Specifically, we cited to case law from the United States Court of Appeals for the Second Circuit and stated: 'In considering whether the court had good cause for not allowing confrontation or that the interest of justice [did] not require the witness to appear . . . the court should balance, on the one hand, the defendant's interest in confronting the declarant, against, on the other hand, the government's reasons for not producing the witness and the reliability of the proffered hearsay.' " (Emphasis added.) *State* v. *Polanco*, supra, 165 Conn. App. 570–71.

On the basis of our review of the record in this case, it is evident that the defendant effectively abandoned his claim that the balancing test referenced in *Crespo* was applicable. Although the defendant maintained his objection based on a due process right to confrontation, he clearly abandoned the balancing test, acknowledging that, because Rainey was now unavailable due to his invocation of his right to remain silent, "the whole issue . . . is reliability." We reiterate that, during the second day of the revocation hearing, defense counsel repeatedly acknowledged that Rainey's unavailability was a "change in circumstance" and asked the court to consider only the reliability of the proffered evidence and whether admitting such evidence would violate the defendant's federal due process rights. Arguing that "the whole issue . . . is reliability," the defendant contended that Rainey's proffered identification evidence was unreliable in light of his marijuana and alcohol consumption. Moreover, defense counsel further disclaimed his initial request that the court apply the balancing test and acknowledged that the test is no longer applicable when, in response to the state's argument, he stated that "[t]he state had referenced a balancing test from *Crespo*. And again, Your Honor, I think the circumstances have changed a bit. *Crespo* governs when the state . . . does not call a witness. . . . The difference is . . . not that they're just not calling him as a witness, it's that he's now unavailable. . . . Effec-

tively cross-examination, confrontation is denied there wholly and completely. . . . The court's analysis is I believe governed by the due process clause of the federal constitution which ensures minimum safeguards in connection with a hearing such as this one, a violation of probation hearing." Thus, the record clearly reflects that defense counsel changed tactics once Rainey invoked his fifth amendment rights and focused solely on whether the evidence regarding his identification of the defendant was reliable.[12] Because we agree with the state that the defendant abandoned this claim, we decline to consider the merits of his claim on appeal.

II

In light of our resolution of the claim raised in part I of this opinion, we briefly address the defendant's ancillary challenge to the court's determination that the hearsay evidence was reliable. Here, we note that "[t]he evidentiary standard for probation violation proceedings is broad. . . . [T]he court may . . . consider the types of information properly considered at an original sentencing hearing because a revocation hearing is merely a reconvention of the original sentencing hearing. . . . The court may, therefore, consider hearsay information, evidence of crimes for which the defendant was indicted but neither tried nor convicted, evidence of crimes for which the defendant was acquitted, and evidence of indictments or informations that were dismissed." (Internal quotation marks omitted.) *State* v. *Megos*, 176 Conn. App. 133, 147, 170 A.3d 120 (2017). Moreover, hearsay evidence presented during a probation revocation hearing may be considered sufficiently reliable when it is supported by corroborating evidence. See *State* v. *Maietta*, 320 Conn. 678, 691, 134 A.3d 572 (2016).

Here, the court found that Rainey identified the defendant "with a high degree of confidence. That [identification] was consistent with his other statements, and he did not vary in any significant way in his explanation of what happened and how it was that he was able to identify the defendant. So [the court finds] . . . his audiovisual recordings to be extremely reliable.

"[The audiovisual recordings] are further corroborated by the testimony from the detective about the phone traffic in essence advising the defendant about what was going on during the course of the home invasion. . . .[13] [H]is various statements are consistent with the court testimony of Eric Rodriguez and Rebecca Thompson. Now, admittedly, they experienced different events, but to the extent that there's overlap they are consistent and remain consistent, which adds to the reliability of Mr. Rainey's statements.

"In addition, Mr. Rainey, during his description of what happened, made a number of statements against penal interest, admitting that he was involved in the

distribution of marijuana which, in the court's view, further heightens the reliability and credibility of the statements which he gave. The video recording of the identification procedure which was employed reveals . . . that Detective Moore complied with the requirements of performing a photo[graphic] array and . . . there was nothing unduly suggestive—there was nothing suggestive at all quite frankly about the identification procedure that was used." (Footnote added.)

We note that "our standard of review is that [the trial court's evidentiary] rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice. . . . In reviewing claims that the trial court abused its discretion, great weight is given to the trial court's decision and every reasonable presumption is given in favor of its correctness. . . . We will reverse the trial court's ruling only if it could not reasonably conclude as it did." (Internal quotation marks omitted.) *State* v. *Megos*, supra, 176 Conn. App. 147. The record clearly reflects that the court engaged in sufficient review and evaluation of the hearsay evidence, including the corroborating evidence, to conclude that the evidence was relevant, reliable and probative. Therefore, we conclude the court did not abuse its discretion in admitting the hearsay evidence in question.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The court found that the defendant violated three conditions of probation: (1) he left the state without proper approval, (2) he failed to submit to substance abuse evaluation and counseling and, (3) to the extent that the defendant was involved in the home invasion discussed subsequently in this opinion, he violated the probation condition that he not violate any criminal law of the United States, this state, or any other state or territory. On appeal, the defendant does not challenge the court's findings that he was in violation of probation for leaving the state and failing to submit to substance abuse evaluation and counseling. The defendant only appeals the court's judgment with respect to the alleged criminal law violation.

[2] On appeal, the defendant specifically argues that the court relied on the defendant's alleged participation in the home invasion and that this finding "substantially contributed to the severity of the trial court's sentence in the dispositional phase . . . ." Because the defendant challenges only one of the court's findings for the violation of probation in making this argument, we note this court's recent decision in *State* v. *Eric L.*, 218 Conn. App. 302, 317–18 n.13, 291 A.3d 621, cert. granted, 346 Conn. 927, 291 A.3d 1041 (2023), in which we acknowledged that, "in order to obtain review of the merits of a claim that the trial court improperly found [the defendant] to be in violation of his probation in a particular way, [it is not necessary to] always successfully challenge on appeal each and every ground on which the court found him to be in violation. If a defendant adequately briefs a claim that a court's alleged error in finding one particular ground during the adjudicatory phase materially affected the severity of the sentence it imposed during the dispositional phase, the court should review the claim because the alleged error may 'have had some bearing on [the] disposition the court ordered and, if the court ordered the defendant to serve some portion of his suspended sentence as to that disposition, what that sentence would be.' "

[3] The court-imposed conditions of probation included, inter alia, that the defendant (1) "not violate any criminal law of the United States, this state or any other state or territory," (2) "not leave the [s]tate of Connecticut without permission from the [p]robation [o]fficer," and (3) "[s]ubmit to any medical and/or psychological examination, urinalysis, alcohol and/or drug testing, and/or counseling sessions required by the [c]ourt or the [p]roba-

tion [o]fficer."

[4] General Statutes § 53a-32 provides in relevant part: "(a) At any time during the period of probation or conditional discharge, the court or any judge thereof may issue a warrant for the arrest of a defendant for violation of any of the conditions of probation or conditional discharge, or may issue a notice to appear to answer to a charge of such violation, which notice shall be personally served upon the defendant. . . ."

[5] The defendant's arrest warrant application stated that "[the defendant] was a suspect in a home invasion that took place at approximately 3 a.m. in Stratford. . . . [Stratford Police Detective Jason Delauri] later notified this affiant [the defendant's probation officer] that [the defendant] was positively identified by the victim of the home invasion in a lineup and that a warrant will be submitted at a later date." The warrant application also indicated that the defendant left Connecticut in violation of the terms of his probation and failed to submit to substance abuse evaluation and treatment as required under the conditions of his probation.

[6] Rodriguez testified that he consumed seven or eight alcoholic drinks throughout the evening and the group smoked several grams of marijuana. Rodriguez also testified that he observed Rainey consume two beers in addition to smoking marijuana.

[7] Defense counsel argued that any testimony by Rodriguez as to what Rainey told him about who committed the home invasion would constitute hearsay and would violate the defendant's due process right to confrontation. The court overruled the objection, finding that Rainey's prior statements were relevant and highly probative to show that Rainey identified the intruder prior to the photographic array identification.

[8] "To qualify as double-blind, a photographic array must be administered by an uninterested party without knowledge of which photograph represents the suspect." *State* v. *Marquez*, 291 Conn. 122, 132, 967 A.2d 56, cert. denied, 558 U.S. 895, 130 S. Ct. 237, 175 L. Ed. 2d 163 (2009).

[9] General Statutes § 53a-32 (c) provides in relevant part that, "[u]pon notification by the probation officer of the arrest of the defendant or upon an arrest by warrant as herein provided, the court shall cause the defendant to be brought before it without unnecessary delay for a hearing on the violation charges. At such hearing the defendant . . . shall be advised by the court that such defendant has the right to retain counsel and, if indigent, shall be entitled to the services of the public defender, and shall have the right to cross-examine witnesses and to present evidence in such defendant's own behalf. . . ."

[10] At the suggestion of defense counsel, Rainey was appointed a special public defender who, after speaking with Rainey, informed the court that, in light of his admission to distributing marijuana during his interview after the incident, Rainey would invoke his fifth amendment protections if called as a witness in the violation of probation hearing.

[11] The record reflects that the defendant objected to the court's findings that (1) the beneficial purposes of probation were no longer being served by the defendant's probation and (2) the defendant has not met the terms of his probation on the basis of the testimony of his supervising probation officers.

[12] We also note that, after his appeal was filed, the defendant filed a motion for articulation, arguing that, although "[i]t is not appropriate . . . for the trial court judge to use the articulation process to change or alter its decision," the trial court's decision was "not clear because, although the defendant identified the balancing test for determining good cause as controlling the court's inquiry, the court did not make any express findings on that issue." In denying the motion, the trial court recounted in its memorandum of decision the procedural history relevant to the motion to suppress, noting that, due to "developments which were not anticipated in the original motion to suppress, the court made a finding that Rainey was not available. . . . Significantly, while reframing his argument in support of suppression, defense counsel did not argue in support of applying the *Crespo* balancing test. . . . In short, counsel abandoned the very standard which he now seeks to have this court articulate." (Citations omitted.) We agree with the trial court's characterization of the record at trial, and we reject as trial by ambuscade this transparent attempt to resuscitate for appeal an issue that the record clearly demonstrates was abandoned.

[13] We note that the court referenced evidence of statements made by Richards, the driver of the getaway car on the night of the home invasion. Specifically, the court recalled evidence that Richards was communicating with the defendant during the home invasion through Facebook Messenger

and that he warned the defendant of a car approaching the home during the home invasion. We also reiterate that the evidence showed that the getaway car was owned by Richards' mother, who was the defendant's stepmother.

--------------------