******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# STATE OF CONNECTICUT *v.* JAQUAN WADE
## (SC 20983)

Mullins, C. J., and McDonald, D'Auria, Ecker and Dannehy, Js.

*Syllabus*

In accordance with the Appellate Court's decision in *State* v. *Crespo* (190 Conn. App. 639), the due process right to confront adverse witnesses at a probation revocation hearing is not absolute but, rather, is determined by application of a balancing test, pursuant to which a court weighs the defendant's interest in confronting the witness against the state's reasons for not producing the witness and the reliability of the proffered evidence.

The defendant appealed, on the granting of certification, from the judgment of the Appellate Court, which had affirmed the trial court's judgment revoking his probation. The revocation of probation was based on allegations that the defendant had violated the conditions of his probation by participating in a home invasion, leaving the state without permission, and failing to submit to substance abuse evaluations and counseling. The defendant claimed that the Appellate Court incorrectly concluded that he or defense counsel had abandoned, at his probation revocation hearing, the defendant's request that the trial court apply a *Crespo* balancing before admitting an out-of-court identification by an unavailable witness, R, of the defendant as one of the individuals involved in the home invasion. *Held*:

The Appellate Court incorrectly concluded that the defendant or defense counsel effectively had abandoned the defendant's claim that the trial court should apply the balancing required by *Crespo* to vindicate his right to confront R, and, accordingly, the defendant was entitled to a new probation revocation hearing.

The defendant properly raised his *Crespo* claim in the first instance in a prehearing motion, and neither the defendant nor his counsel expressly or impliedly abandoned that claim at the probation revocation hearing.

Defense counsel never indicated to the trial court that it did not need to balance the interests of the defendant and the state in determining whether to admit R's identification, and counsel did not manifest an intent to abandon the *Crespo* claim when he stated that the circumstances had changed after R indicated that he would invoke his right against self-incrimination if the state called him to testify, or when counsel stated that, with regard to the defendant's motion to suppress R's identification, "the whole issue there is reliability."

Because the defendant's *Crespo* claim was not abandoned, the trial court should have engaged in the *Crespo* balancing prior to admitting R's identification of the defendant, and because the trial court relied on that identification

in determining that the defendant had violated the condition of his probation requiring him not to violate any criminal laws, the case was remanded for a new probation revocation hearing limited to a determination of whether the defendant was involved in a home invasion in violation of that particular condition.

This court, however, upheld the trial court's findings that the defendant had violated the conditions of his probation requiring him to submit to substance abuse evaluations and counseling, and requiring him not to leave the state, and those findings, therefore, were not to be relitigated at the defendant's new probation revocation hearing.

Argued February 6—officially released April 22, 2025

*Procedural History*

Substitute information charging the defendant with violation of probation, brought to the Superior Court in the judicial district of Fairfield and tried to the court, *Hernandez, J.*; judgment revoking the defendant's probation, from which the defendant appealed to the Appellate Court, *Elgo*, *Suarez* and *Clark, Js.* which affirmed the trial court's judgment, and the defendant, on the granting of certification, appealed to this court. *Reversed in part*; *further proceedings.*

*Erica A. Barber*, assistant public defender, for the appellant (defendant).

*Meryl R. Gersz*, assistant state's attorney, with whom, on the brief, were *Joseph T. Corradino*, state's attorney, and *Joseph J. Harry*, senior assistant state's attorney, for the appellee (state).

*Opinion*

D'AURIA, J. In this certified appeal, the defendant, Jaquan Wade, appeals from the Appellate Court's judgment affirming the trial court's revocation of his probation and imposition of a thirteen year term of incarceration. The defendant claims that the Appellate Court incorrectly concluded that, at his probation revocation hearing, he had abandoned his argument that the trial court should engage in a due process balancing under *State*

v. *Crespo*, 190 Conn. App. 639, 646–48, 211 A.3d 1027 (2019), before admitting into evidence a witness' out-of-court identification when that witness was not present and available for cross-examination. We agree and reverse the Appellate Court's judgment.

The Appellate Court in its opinion aptly recited the facts and procedural history required to resolve this appeal; see *State* v. *Wade*, 221 Conn. App. 690, 705, 303 A.3d 915 (2023); which we summarize along with other undisputed facts in the record. In 2012, the defendant had pleaded guilty to conspiracy to commit murder in violation of General Statutes §§ 53a-48 and 53a-54a (a), and the trial court in 2013 sentenced him to a total effective term of twenty years of incarceration, execution suspended after seven years, followed by five years of probation. In 2018, the Department of Correction released the defendant from custody, and his probation began.

Fifteen months later, the defendant's probation officer, Eileen Marano, successfully applied for an arrest warrant, alleging that the defendant had violated the conditions of his probation, including the condition that required him not to violate any criminal law. The warrant provided that the Stratford Police Department had notified Marano that the defendant was a suspect in a Stratford home invasion; a victim of that home invasion, later revealed to be Lawrence Rainey, positively identified the defendant from a photographic array; and the police would seek a warrant for the defendant's arrest for that home invasion. The warrant further provided that the defendant had violated additional conditions of his probation that mandated that he obtain permission before leaving Connecticut and that he engage in substance abuse evaluation and treatment. The state arrested the defendant, and a hearing was scheduled to determine whether he had violated the conditions of his

probation in violation of General Statutes (Rev. to 2019) § 53a-32.

Before his probation revocation hearing, the defendant filed three motions seeking to exclude from evidence Rainey's pretrial identification of the defendant from the photographic array as one of the perpetrators, as well as any testimony from the Stratford police regarding that identification. First, the defendant moved to suppress Rainey's identification as unreliable based on the procedures used by the Stratford police. Second, the defendant moved to preclude from evidence Rainey's identification because the identification procedures the Stratford police had used to procure it violated the defendant's due process rights under the fourteenth amendment to the federal constitution and article first, §§ 8 and 9, of the state constitution. Third, the defendant moved to vindicate his constitutional due process right to confront Rainey at the probation revocation hearing, requesting that, if the state did not produce Rainey to testify, the court should "engage in the balancing test required by *State* v. *Crespo*, [supra, 190 Conn. App. 639], and . . . find that the defendant's right to confront [Rainey] outweighs the state's reasons for not producing [Rainey] and preclude any testimony regarding the issue of identification." (Citation omitted.) The prosecutor opposed each of the defendant's motions, arguing in relevant part that *Crespo* does not afford the defendant an absolute right to confront witnesses at a probation revocation hearing.

At the outset of the hearing, the trial court indicated that it had discussed the defendant's motions with counsel in chambers and that they had agreed that the court would defer its rulings until the close of evidence. The prosecutor first presented Marano's testimony that the defendant had failed to comply with the conditions of his probation requiring him to submit to substance

abuse evaluations and counseling, and not to leave the state of Connecticut without permission.

The prosecutor then called two witnesses, Eric Rodriguez and Rebecca Thompson, who were drinking alcohol and smoking marijuana at Rainey's residence when the home invasion occurred. They testified that they were on the first floor and Rainey was in the second floor bathroom when three masked men entered the residence unannounced. Two of the men ran upstairs where they encountered Rainey, while the third ordered Rodriguez and Thompson to the ground at gunpoint. A scuffle between the third masked man and Rodriguez followed, during which the masked man seriously injured Rodriguez' hand with a kitchen knife he had grabbed from the kitchen counter. The masked man then stole Rodriguez' and Thompson's cell phones and Rodriguez' car keys. Shortly afterward, all three men fled the residence, having spent ten minutes or less inside.

Neither Rodriguez nor Thompson identified the defendant, or anyone else, as one of the perpetrators of the home invasion because the intruders had worn masks. Rodriguez testified, however, that his friend, Rashaun Richards, previously had asked him to help rob Rainey, but Rodriguez declined to join him. Rodriguez further testified that Rainey had told him that he had "a hunch" about the identities of the masked men. When the prosecutor asked about this hunch, defense counsel objected on the grounds of "hearsay and . . . [the defendant's] due process rights to confrontation at this hearing . . . ." The court overruled the objection, and Rodriguez testified that Rainey thought it was Pharoh Eaton and Eaton's friend because they had bought marijuana from Rainey the day before the home invasion and "knew where everything was, where to go, and all the stuff . . . ."

The prosecutor next called two police officers, Detectives Jason Delauri and Todd Moore, who investigated

the home invasion and obtained Rainey's identification of the defendant. The prosecutor asked Delauri whether Rainey had identified any of the masked men, and defense counsel objected, stating, "[a]gain, this goes to the ultimate issue that we've been harping on. So, I again renew my objection as to anything that . . . Rainey said." The court overruled the objection. When the state sought to introduce the video of Rainey's initial interview with the police and the video of Rainey's identification of the defendant from the photographic array, defense counsel again objected, reiterating "that in . . . Rainey's absence, [the defendant's] right to confront . . . the adverse witness against him in this particular circumstance [has] been violated pursuant to the due process clause of the federal constitution. I will be unable to cross-examine . . . Rainey as to anything indicated in this video and, for reasons that this piece of evidence does come in, that will become apparent. There are numerous grounds for cross-examination as to his recollection, the reliability of . . . his identification, and the version of events he gives. So, for those reasons, we would object again." The court deferred ruling on the admissibility of the videos and marked them for identification, "compliment[ing] [defense counsel] for flagging the issues raised in his motions. They are important issues, and they are—they need to be carefully considered, but I don't think I can rule until I've actually seen [the exhibits]."

The officers testified, and the videos depicted, that Rainey had told them that, when he was leaving the second floor bathroom, he encountered two men wearing mesh type fencing masks who ransacked his bedroom and robbed him at knifepoint. Rainey first told the police that he did not know who had robbed him, but he later told them that he recognized the perpetrator who pulled the knife on him as Eaton's friend. He told the police that Eaton's friend had purchased marijuana

from him the day before but that he did not know the friend's name. He described Eaton's friend as a black male, five feet, ten inches tall, mid to late twenties, with a bulky build and dreadlocks. Based on this information, Moore and Delauri returned to Rainey's residence the next day to show him a photographic array. Rainey reviewed the photographs and identified the defendant with about 85 percent certainty. During the identification procedure, Rainey told the officers that he had learned from another friend, Drew, that his attacker's name was Quan, and he believed that his last name was Wade. One of the police officers can be heard on the video of the identification procedure remarking that Rainey was noticeably high on marijuana, which Moore testified could have been his voice, and that he could have been referring to Rainey's appearance either during the identification procedure or immediately after the home invasion.

At the end of the first day of evidence, the court again heard argument on the defendant's prehearing motions. Defense counsel stated that, "[o]ftentimes, the claims made are not preserved properly, which is why I filed a motion asking the court to engage in the balancing test via *Crespo*," and he contended that "[c]onfrontation is extremely significant" and "goes directly to the heart of an eyewitness identification." The court recognized that, "under *Crespo*, [it has] to balance the defendant's confrontation right against or evaluate it in the light of the state's stated reason for . . . Rainey's absence. And I honestly, at this point, I'm not sure of what steps, if any, were actually undertaken by the state to secure . . . Rainey's testimony."

Six days later, during the second day of evidence, the prosecutor represented that the state had located and established contact with Rainey. The court then recounted the circumstances that had occurred since the prior hearing, as confirmed by an email chain

entered into evidence as a court exhibit: "[Rainey] indicated that he was willing to testify by audiovisual communication or by telephone in the . . . hearing. And [he] also indicated that he would travel to Connecticut to testify at [the] home invasion trial. In light of the admissions that . . . Rainey made during his interview after this incident in which he admitted to distributing marijuana, [defense counsel] suggested that we see about having . . . a special assistant public defender speak with . . . Rainey. [Rainey's defense counsel] sent us the email . . . stating, basically . . . Rainey will invoke fifth amendment protections if called as a witness in connection with the . . . hearing." Defense counsel responded that "the agreement between me, the state and the court is that this is not a circumstance where now the state is simply not calling . . . Rainey. It's that . . . if the state were to call . . . Rainey, he would assert that fifth amendment right against self-incrimination. And that is the only reason why he's not appearing to be canvassed." Therefore, the court found that Rainey was "not available, and, if called, he would assert his fifth amendment privilege against self-incrimination."

In light of this development, the court once again heard arguments on the defendant's prehearing motions. Defense counsel stated that "the circumstances have . . . changed" since he first filed his motions, including "the motion that articulates the *Crespo* standard," because the state has been able to identify, locate, and speak with Rainey. Defense counsel continued, stating "[t]hat the change in circumstance, the invocation of the fifth amendment right, has completely undermined [the defendant's] ability to engage in a meaningful cross-examination or confrontation with the critical witness in this circumstance. And, as such, the consideration of that evidence would amount to a violation of due process. And that argument would extend to the motion to sup-

press as well. Our argument is simply that the evaluation of the confrontation rights here under the due process clause after doing so, allowing the state to benefit from that evidence to [the defendant's] detriment in that he could not confront the critical witness in this particular instance relating to the home invasion case, and not addressing the issue of probation at this time would violate his due process rights. . . . Rainey's unavailability, as I said, completely undermines that right. And that would be our argument as to why the court . . . [should] grant the motion to preclude identification testimony, not just from the offered video, but from any witness who spoke to that event specifically related to . . . Rainey. . . . And many of these arguments have been made on a prior occasion when these motions were first filed. So, I'd ask the court to simply take all of that into consideration in making its judgment."

The prosecutor "underst[ood] defense counsel's concern with the confrontation and with the photo array," but argued that the defendant does not have an "absolute right" to confront the witnesses against him at a revocation of probation hearing. The prosecutor then argued that the state had satisfied its burden under *Crespo*, stating that "you have to find good cause [as to] why the state didn't call the individual. And, if the state is not going to call the individual, [then the court must consider] why the state didn't call the individual. Now, besides the fact that we're in [a COVID-19 pandemic], travel restrictions, you know, the time and money to get the witness up for a violation of probation, this is not the trial . . . and . . . the case law has already established if someone invokes their fifth [amendment right], I cannot put them on the stand if I know they're going to invoke the fifth. And that makes them unavailable to both myself and defense counsel. It's a balancing test . . . ." The prosecutor directed the court to *State* v. *Tucker*, 179 Conn. App. 270, 281, 178 A.3d 1103, cert.

denied, 328 Conn. 917, 180 A.3d 963 (2018), a case relied on by the Appellate Court in *Crespo*; see *State* v. *Crespo*, supra, 190 Conn. App. 647; contending that the state had established good cause under the due process balancing test for its failure to produce Rainey. Ultimately, the prosecutor asked the court to deny all the defendant's prehearing motions. He never contended that the defendant had abandoned his *Crespo* balancing claim, however.

Defense counsel responded that, "[f]irst and foremost, with regard to the motion to suppress, the whole issue there is reliability. . . . The state had referenced a balancing test from *Crespo*. And again, Your Honor, I think the circumstances have changed a bit. *Crespo* governs when the state . . . does not call a witness," and, "it's not that [the state is] just not calling [Rainey] as [a] witness, it's that he's now unavailable. And he's made himself unavailable by asserting a privilege or a right extended to him by the [United States] constitution. Effectively, cross-examination, confrontation is denied there, wholly and completely." Defense counsel contended that the court's analysis was governed by the defendant's due process clause right to confront adverse witnesses, not his sixth amendment right to confrontation under *Crawford* v. *Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), and that those "minimum safeguards" include "a minimum right to confront evidence against you [and to] cross-examine witnesses." He argued that "the video interview in the absence of confrontation and cross-examination, all of those things weigh in [the defendant's] favor as to whether his due process rights would be violated in the absence of . . . Rainey's testimony. The court made a finding that . . . Rainey is unavailable; that is now part of the record. And, again, it's completely destroyed our ability to confront against anything he says."

The court orally denied all three of the defendant's motions, rejecting the defendant's assertion that it should not consider Rainey's identification "because it deprive[d] the defendant of his right to confront the witness against him. The violation of probation proceeding is not a criminal proceeding; it's a hybrid proceeding. And the protections which are typically afforded to defendants in a criminal trial while similar in a violation of probation hearing are not the same. . . . [T]he court can consider information which is relevant and reliable." The court later issued an order denying without explanation the defendant's *Crespo* motion. In its oral and written rulings, the court neither engaged in the *Crespo* balancing or in any way indicated that the defendant had abandoned that motion. The court also found that the defendant had violated his probationary conditions requiring him to submit to substance abuse evaluations and counseling, not to leave the state of Connecticut without permission, and not to violate any criminal laws as a result of his involvement in the home invasion. The court further determined that the purposes of probation were no longer being served, revoked the defendant's probation, and imposed a thirteen year sentence of incarceration, which represented the balance of the suspended term of imprisonment.[1]

After the defendant appealed to the Appellate Court,[2] he moved the trial court to articulate whether it had engaged in the *Crespo* balancing inquiry and had made a good cause finding to admit Rainey's identification.

---

[1] After the revocation of the defendant's probation, the state charged and tried the defendant and Richards separately for their alleged involvement in the home invasion The defendant's criminal trial resulted in a mistrial, and Richards was acquitted of all charges. The state later nolled the home invasion charges against the defendant.

[2] The defendant does not challenge on appeal the trial court's additional findings that he violated his probationary conditions requiring him to submit to substance abuse evaluations and counseling and not to leave the state of Connecticut without permission.

The state opposed the articulation, arguing for the first time seven months after the hearing that the defendant had waived his *Crespo* claim before the trial court by taking the position at the hearing that the "situation had changed" since the state had located Rainey. The trial court denied the defendant's motion on the ground that he had abandoned his request that the court apply the *Crespo* balancing test at the probation revocation hearing. The defendant moved in the Appellate Court for review of the trial court's order, maintaining that the new contention by the state and the trial court that he had abandoned his *Crespo* claim was inaccurate, but the Appellate Court denied his request for relief.

Before the Appellate Court, the defendant argued that the trial court's admission of the videos and related testimony of Rainey's identification of him, without applying the balancing test referenced in *State* v. *Crespo*, supra, 190 Conn. App. 647, violated his due process right to confrontation under the fourteenth amendment. See *State* v. *Wade*, supra, 221 Conn. App. 702–703. The Appellate Court did not consider the merits of this claim, however, because it agreed with the state that the defendant, after the close of the second day of evidence, had effectively abandoned his request that the trial court apply the *Crespo* balancing test. See id., 703–705. Particularly, the Appellate Court held that, "[a]lthough the defendant maintained his objection based on a due process right to confrontation, he clearly abandoned the balancing test, acknowledging that, because Rainey was now unavailable due to his invocation of his right to remain silent, 'the whole issue . . . is reliability.' " Id., 705. The court further held that "defense counsel repeatedly acknowledged that Rainey's unavailability was a 'change in circumstance' and asked the court to consider only the reliability of the proffered evidence and whether admitting such evidence would violate the defendant's federal due process rights." Id. The Appellate

Court also concluded that the trial court had not abused its discretion by determining that Rainey's identification was reliable, and the Appellate Court therefore affirmed the trial court's judgment. See id., 705–708. This certified appeal followed.[3]

There is no dispute that the defendant properly raised his claim that the trial court undertake a *Crespo* balancing in the first instance. The primary issue on appeal is whether he subsequently abandoned, or waived, that claim on the second day of the hearing. "[W]aiver is an intentional relinquishment or abandonment of a known right or privilege. . . . It involves the idea of assent, and assent is an act of understanding. . . . The rule is applicable that no one shall be permitted to deny that he intended the natural consequences of his acts and conduct." *State* v. *Velasquez-Mattos*, 347 Conn. 817, 847, 300 A.3d 583 (2023). A defendant or his counsel may abandon his constitutional rights "either expressly or impliedly by his deliberate action." (Internal quotation marks omitted.) *State* v. *Smith*, 289 Conn. 598, 621, 960 A.2d 993 (2008); see also *State* v. *Culbreath*, 340 Conn. 167, 179, 263 A.3d 350 (2021).

"In determining waiver, the conduct of the parties is of great importance. . . . When a party consents to or expresses satisfaction with an issue at trial, claims

[3] We certified two questions for our review: (1) "Did the Appellate Court correctly conclude that the defendant abandoned his claim that the trial court improperly had failed to apply the balancing test set forth in [*Crespo*]. . . ?" And (2) "[i]f the answer to the first question is 'no', did the trial court's reliance on hearsay evidence to revoke the defendant's probation violate his due process right to confront adverse witnesses?" *State* v. *Wade*, 348 Conn. 947, 947, 308 A.3d 35 (2024). We answer only the first certified question, and do not reach the second certified question because we decline to undertake the *Crespo* balancing test for the first time on appeal. See footnote 4 of this opinion. We likewise do not reach the Appellate Court's decision to uphold the trial court's discretionary determination that Rainey's identification was reliable hearsay because the issue is outside the scope of the certified questions. See id.

arising from that issue are deemed waived and may not be reviewed on appeal." (Citation omitted; internal quotation marks omitted.) *State* v. *Hampton*, 293 Conn. 435, 449, 988 A.2d 167 (2009). A defendant cannot "pursue one course of action at trial and later, on appeal, argue that a path he rejected should now be open to him." (Internal quotation marks omitted.) *State* v. *Outing*, 298 Conn. 34, 64, 3 A.3d 1 (2010), cert. denied, 562 U.S. 1225, 131 S. Ct. 1479, 179 L. Ed. 2d 316 (2011); see also *In re Aisjaha N.*, 343 Conn. 709, 722, 275 A.3d 1181 (2022) (" '[w]hether we call it induced error, encouraged error, waiver, or abandonment, the result—that the . . . claim is unreviewable—is the same' "). We employ plenary review as to whether the defendant had abandoned his argument before the trial court. See, e.g., *State* v. *Ramon A. G.*, 336 Conn. 386, 399, 246 A.3d 481 (2020).

A review of the cases defining the due process protections afforded to a defendant at a probation revocation hearing, including *Crespo*, informs our abandonment analysis. "The due process clause of the fourteenth amendment to the United States constitution requires that certain minimum procedural safeguards be observed in the process of revoking the conditional liberty created by probation." (Internal quotation marks omitted.) *State* v. *Faraday*, 268 Conn. 174, 182, 842 A.2d 567 (2004). The Appellate Court, relying on United States Supreme Court cases, has held that those federal due process protections include a defendant's right—albeit, not an absolute right—to confront adverse witnesses at a probation revocation hearing. See *State* v. *Shakir*, 130 Conn. App. 458, 467–68 and n.6, 22 A.3d 1285 (citing *Gagnon* v. *Scarpelli*, 411 U.S. 778, 782, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973), and *Morrissey* v. *Brewer*, 408 U.S. 471, 489, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972)), cert. denied, 302 Conn. 931, 28 A.3d 345 (2011); see also *Gagnon* v. *Scarpelli*, supra, 782 (due process guarantees

are identical for revocation of parole, probation and supervised release); *Morrissey* v. *Brewer*, supra, 489 (due process mandates at parole revocation hearings "the right to confront and cross-examine adverse witnesses . . . unless the hearing officer specifically finds good cause for not allowing confrontation" (internal quotation marks omitted)).[4] In *Crespo*, the Appellate Court reiterated its previous holdings and held that "[t]he exercise of the right to confront adverse witnesses in a probation revocation proceeding is not absolute, but rather entails a balancing inquiry conducted by the court, in which the court must balance the defendant's interest in cross-examination against the state's good cause for denying the right to cross-examine. . . . In considering whether the court had good cause for not allowing confrontation or that the interest of justice [did] not require the witness to appear . . . the court should balance, on the one hand, the defendant's interest in confronting the declarant, against, on the other hand, the government's reasons for not producing the witness and the reliability of the proffered hearsay." (Internal quotation marks omitted.) *State* v. *Crespo*, supra, 190 Conn. App. 647.

---

[4] The Appellate Court has consistently decided that defendants had failed to properly preserve their balancing test claim before the trial court; see, e.g., *State* v. *Taveras*, 219 Conn. App. 252, 268, 295 A.3d 421, cert. denied, 348 Conn. 903, 301 A.3d 527 (2023); *State* v. *Jackson*, 198 Conn. App. 489, 506–508, 233 A.3d 1154, cert. denied, 335 Conn. 957, 239 A.3d 318 (2020); *State* v. *Crespo*, supra, 190 Conn. App. 645–48; *State* v. *Esquilin*, 179 Conn. App. 461, 472–74, 179 A.3d 238 (2018); *State* v. *Tucker*, supra, 179 Conn. App. 281; *State* v. *Polanco*, 165 Conn. App. 563, 571–73, 140 A.3d 230, cert. denied, 322 Conn. 906, 139 A.3d 708 (2016); *State* v. *Shakir*, supra, 130 Conn. App. 465–68; a point defense counsel in the present case emphasized as he sought to preserve the issue clearly. Thus, neither we nor the Appellate Court has undertaken a *Crespo* balancing on appeal. There may be a future circumstance in which it is appropriate for an appellate court to engage in a *Crespo* balancing for the first time on appeal when "the underlying facts have been sufficiently developed"; *United States* v. *Martin*, 382 F.3d 840, 845 (8th Cir. 2004); but we do not do so in the present case. See *United States* v. *Peguero*, 34 F.4th 143, 156 (2d Cir. 2022) (holding that District Court's due process balancing to admit evidence at probation revocation hearing is discretionary).

Our review of the record leads us to conclude that the Appellate Court incorrectly determined that the defendant effectively had abandoned his claim that the trial court should engage in a due process balancing pursuant to *Crespo* to vindicate his right to confront Rainey. In contrast to the state's argument, the record plainly establishes that the defendant did not "expressly" or "explicitly" abandon his *Crespo* balancing claim because he never indicated that the court no longer needed to balance the interests to determine whether to admit Rainey's identification and related testimony. Nor, as we will explain, did defense counsel impliedly relinquish his argument that the trial court should engage in the *Crespo* balancing inquiry when he stated that there had been a "change in circumstance" and that "the whole issue . . . is reliability."

By referring to Rainey's unavailability as a "change in circumstance," defense counsel in no way manifested an intent to abandon his *Crespo* claim. Defense counsel instead argued that this "change in circumstance" bolstered his *Crespo* claim because Rainey's unavailability "completely undermined" the defendant's right to confront him under the due process clause and allowed "the state to benefit from that evidence to [the defendant's] detriment in that he could not confront the critical witness in this particular instance relating to the home invasion case, and not addressing the issue of probation at this time would violate his due process rights." Defense counsel made clear that his *Crespo* claim survived this change in circumstance by arguing that "*Crespo* governs when the state . . . does not call a witness," and "it's not that [the state is] just not calling [Rainey] as [a] witness, it's that he's now unavailable. And he's made himself unavailable by asserting a privilege or a right extended to him by the [United States] constitution. Effectively, cross-examination, confrontation is denied there, wholly and completely." Defense

counsel also explicitly invoked the terms of the *Crespo* balancing test by asserting that the state's failure to produce Rainey must be "weigh[ed]" against the defendant's interest in confronting Rainey. Defense counsel's recognition that Rainey's availability impacted the second prong of the *Crespo* balancing test does not amount to an abandonment of his request that the court balance that unavailability against the defendant's right to confront Rainey. To the contrary, rather than abandoning his *Crespo* claim, defense counsel expressly incorporated, and asked the court to consider, his many prior arguments on this issue "when these motions were first filed."

Likewise, defense counsel's statement that "the whole issue . . . is reliability" did not constitute an intentional abandonment of his *Crespo* claim. Initially, defense counsel qualified his statement by saying, "[f]irst and foremost, *with regard to the motion to suppress*, the whole issue there is reliability." (Emphasis added.) On its face, it is not clear whether this statement was in reference to the defendant's separate motion to suppress Rainey's identification as unreliable based on the Stratford police identification procedures, as opposed to his *Crespo* motion to secure his right to confrontation. But, regardless, defense counsel's statement emphasizing "reliability" demonstrated his reliance on the second prong of *Crespo*, which mandates that the court balance "the government's reasons for not producing the witness *and the reliability of the proffered hearsay*." (Emphasis added; internal quotation marks omitted.) *State* v. *Crespo*, supra, 190 Conn. App. 647. Reliability is a fundamental part of the *Crespo* balancing test, particularly when the state has good reason not to produce a witness, such as the witness' invocation of his right against self-incrimination. Thus, defense counsel's argument that the court must consider reliability *supported* his *Crespo* claim. It did not abandon that claim.

The Appellate Court stated, and the state agrees, that "the defendant maintained his objection based on a due process right to confrontation, [but] he clearly abandoned the balancing test . . . ." *State* v. *Wade*, supra, 221 Conn. App. 705. We discern no meaningful difference between the legal framework that supports *Crespo*—the defendant's due process right to confrontation at a probation revocation proceeding—and the *Crespo* balancing test that ensures that the defendant is afforded that right. See *State* v. *Crespo*, supra, 190 Conn. App. 647 (due process "right to confront adverse witnesses in a probation revocation proceeding is not absolute, but rather entails a balancing inquiry conducted by the court, in which the court 'must balance the defendant's interest in cross-examination against the state's good cause for denying the right to cross-examine' ").

Because abandonment " 'involves the idea of assent' "; *State* v. *Velasquez-Mattos*, supra, 347 Conn. 847; we also find it persuasive that both the state and the trial court understood the defendant's *Crespo* claim to survive the purported change in circumstances. The state recognized that the defendant's *Crespo* balancing claim survived the fact that Rainey was no longer available because the prosecutor argued that the state had satisfied its burden under *Crespo*, stating that "you have to find good cause [as to] why the state didn't call the individual. And, if the state is not going to call the individual, why the state didn't call the individual . . . . And that makes them unavailable to both me and defense counsel. *It's a balancing test* . . . ." (Emphasis added.) The prosecutor specifically stated that he "*underst*[*ood*] defense counsel's concern with the *confrontation* and with the photo array," and asked the court to deny all three of the defendant's prehearing motions, including his motion to secure his due process right to confrontation, and never maintained that the

defendant's *Crespo* motion was no longer at issue. (Emphasis added.) Furthermore, before adopting the prosecutor's belated abandonment claim in its ruling on the defendant's articulation motion, the trial court appeared to consider the defendant's *Crespo* claim to present a live controversy because it orally denied the defendant's *Crespo* motion during the hearing and issued a written denial after the hearing. If the court had understood at the time of the hearing that the defendant had abandoned his *Crespo* claim, we expect that it would have taken no action on his motion specifically asking it to engage in that balancing or have stated that it was not ruling on that motion because the defendant had abandoned it.

In short, we conclude that the record establishes that the defendant, through his counsel, did not abandon his claim that the trial court should undertake a balancing inquiry in accordance with *Crespo*, and, thus, the trial court should have undertaken that balancing. Consequently, the trial court improperly relied on Rainey's identification to support its evidentiary finding, dispositional determination, and imposition of a thirteen year sentence of incarceration.

Under these circumstances, the remedy for a trial court's error in admitting evidence under an improper legal standard during a probation revocation proceeding is a remand for a new evidentiary hearing to determine whether the defendant engaged in a home invasion and thereby violated the condition of his probation not to violate any criminal laws.[5] See, e.g., *State* v. *Davis*,

---

[5] We acknowledge that the parties have requested that we remand the matter for a new dispositional determination, but their arguments are contingent on our undertaking the *Crespo* balancing on appeal. Because we decline to undertake that balance; see footnote 4 of this opinion; we must remand this case for a new evidentiary phase because the *Crespo* balancing can occur only during the evidentiary phase of the probation revocation proceeding and must serve as the predicate for the court's subsequent dispositional determination. See, e.g., *State* v. *Tucker*, supra, 179 Conn. App. 280–81 (due process balancing occurs during evidentiary portion of probation revocation proceeding).

229 Conn. 285, 303, 641 A.2d 370 (1994) (remanding for new probation revocation hearing when trial court erred by failing to articulate whether it was applying proper standard of proof at evidentiary hearing); *State* v. *Parker*, 201 Conn. App. 435, 437, 242 A.3d 132 (2020) (remanding for new probation revocation hearing when trial court erred during evidentiary phase by failing to make necessary findings to satisfy element of offense of probation violation). But cf. *State* v. *Mourning*, 249 Conn. 242, 250–52, 733 A.2d 181 (1999) (remanding for new dispositional hearing when trial court's error affected only dispositional phase).

We therefore reverse the trial court's judgment and remand the case for a new probation revocation hearing *only* with respect to whether the defendant had engaged in a home invasion in violation of his probation condition not to violate any criminal laws. Because the defendant does not challenge on appeal the trial court's additional findings that he had violated his probation conditions requiring him to submit to substance abuse evaluations and counseling and not to leave the state of Connecticut without permission, those findings stand and should not be relitigated at the evidentiary hearing on remand. Should the state continue to pursue this matter on the same or narrower grounds; see footnote 1 of this opinion; it will do so before a different judge who will be required to apply the *Crespo* balancing when determining whether to admit Rainey's identification and related testimony. See, e.g., General Statutes § 51-183c; *Barlow* v. *Commissioner of Correction*, 328 Conn. 610, 612–14, 182 A.3d 78 (2018); *State* v. *Strickland*, 243 Conn. 339, 354, 703 A.2d 109 (1997). The court should then proceed to the dispositional phase in accordance with § 53a-32.

The judgment of the Appellate Court is reversed in part and the case is remanded to that court with direction to reverse the trial court's judgment except with

respect to the trial court's determinations that the defendant had violated the conditions of his probation requiring him to submit to substance abuse evaluations and counseling and not to leave the state of Connecticut without permission, and with direction to remand the case for a new probation revocation hearing.

In this opinion the other justices concurred.